

NUMBER 13-08-00056-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DINO FERREIRA SCARDINO,                                   Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

**On appeal from the County Court at Law
of Aransas County, Texas.**

# O P I N I O N

**Before Chief Justice Valdez and Justices Yañez and Benavides
Opinion by Chief Justice Valdez**

After the trial court denied a pretrial motion to suppress evidence obtained during a traffic stop that was filed by appellant, Dino Ferreira Scardino, a jury found him guilty of driving while intoxicated, a Class B misdemeanor, which was enhanced to a Class A misdemeanor because of a prior conviction for driving while intoxicated.  *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003), § 49.09(a) (Vernon Supp. 2008).  The trial court sentenced Scardino to confinement in jail for one year and probated the sentence for one

year; it also assessed a $4,000 fine and court costs.  On appeal, Scardino challenges the trial court's denial of his motion to suppress.  We reverse and remand.

## I. BACKGROUND

The facts in this case are undisputed.  At approximately 10:30 p.m. on January 12, 2007, Texas Department of Public Safety Trooper H. Harkins was traveling southbound on Highway 35 in the town of Fulton, Texas, when he came upon a 2005 Ford pickup traveling in the same direction.  At the suppression hearing, Trooper Harkins testified on direct examination by the State that:

> As I was behind the driver, I observed the driver, I observed the vehicle to be weaving back and forth within its lane, kind of a slow drift, never crossing the line.  Just kind of simply kind of back and forth within its lane.  I continued to follow the vehicle.  The driver the whole time was just kind of weaving back and forth, never driving straight.
>
> It came to a point on the highway where the driver crossed the fog line, he steered back to get back in his lane.  When he did, he was angling towards the center stripe.  As he was going towards the center stripe, he then steered back to keep from crossing the line in a very—just really erratic kind of rough driving.
>
> I continued to follow him after that.  And he just kind of [went] back and forth in the lane until he got straightened out down the highway.  And I went ahead and stopped him.

Trooper Harkins testified that he observed the pickup's driving for approximately half a mile before initiating a traffic stop.  The trooper explained he initiated the traffic stop out of concern that the pickup was weaving because the driver was medically ill; he did not testify that he initiated the traffic stop because he suspected Scardino was intoxicated.  Upon contacting Scardino, Trooper Harkins noticed that his eyes were glassy and bloodshot, and his speech was slurred.  The trooper asked Scardino if he had been drinking, and Scardino replied that he had drank four beers.  Trooper Harkins then administered several field sobriety tests and a breathalyzer.  Scardino's breath specimen registered above the legal

2

limit, and he was arrested.

On cross examination by defense counsel, the following discussion took place:

[Defense Counsel]: So you cannot testify to [the trial court] that Mr. Scardino did not—or that he did anything unsafe, can you?

[Trooper Harkins]: No, sir. It was not an unsafe movement. It was simply a jerky kind of sporadic driving. But it was at no time unsafe.

[Defense Counsel]: And you agree with the proposition that [the county attorney] told the [trial court] that, number one, all this occurred within the lane—within Mr. Scardino's lane—with the exception of crossing over the fog line one time?

[Trooper Harkins]: That's correct, sir.

[Defense Counsel]: And you agree with his analysis, also, that—what you said is that after he came off the fog line, he pulled back into his lane but did not cross over another stripe. Correct?

[Trooper Harkins]: That is correct. At no time did he cross over the center stripe.

After cross-examining Trooper Harkins, defense counsel offered a dashboard videotape recording that was taken the evening Trooper Harkins encountered and arrested Scardino, and it was admitted and viewed by the trial court.

The trial court then entertained arguments from both parties. The State posited reasonable suspicion existed on the grounds that: (1) Trooper Harkins' believed Scardino violated section 545.058[1] of the transportation code by driving on the shoulder; and (2) Trooper Harkins appropriately exercised a law enforcement officer's "community caretaking

---

[1] In the reporter's record, the State cites section 545.048 of the transportation code. However, that section does not exist. We believe that the State meant section 545.058, which provides that an "operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely" but only under a limited number of circumstances. *See* TEX. TRANSP. CODE ANN. § 545.058(a) (Vernon 1999).

3

function." Scardino countered by arguing that reasonable suspicion did not exist under the "totality of the circumstances" test. In orally denying Scardino's motion to suppress, the trial court stated: "If it would have been just one weave in there, I probably would have granted it. There was more than one." Later, a written order denying the motion was signed. After denying Scardino's motion, the trial court issued the following pertinent findings of fact:

1. On January 12, 2007, the Defendant was weaving across the shoulder line (fog line) and almost over the center line and also wove within his own lane while operating a motor vehicle in a public place in Aransas County, Texas. He was subsequently pulled over by a Department of Public Safety officer. The stopping (arresting) officer did not specifically state the defendant did this weaving in an "unsafe" manner.

2. During the traffic stop, the defendant exhibited signs of intoxication while undergoing field sobriety testing. The defendant was arrested for driving while intoxicated.

Scardino's case was tried to a jury, and he was found guilty. This appeal ensued.

## II. DISCUSSION

In his sole issue, Scardino argues the State did not establish that reasonable suspicion existed to pull him over under either section 545.058(a) of the transportation code or the community caretaking exception to the Fourth Amendment's reasonable suspicion requirement. The State, in a four-page brief that does not reference the two justifications it asserted before the trial court, responds by arguing that the detention was justified under the "totality of the circumstances."

## A.    Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *see also Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court's findings of

4

fact are given "almost total deference." *Carmouche*, 10 S.W.3d at 327-28; *Guzman*, 955 S.W.2d at 89-90. The trial court's denial of a motion to suppress is reviewed for abuse of discretion, *see Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999), but when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we apply a de novo standard of review, *see Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

## B.    Applicable Law

A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.–Austin 1998, pet. ref'd). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App.1997). A detaining officer must have specific articulable facts that, taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id*.; *Hernandez*, 983 S.W.2d at 869. It is the State's burden to prove that a warrantless detention was lawful. *State v. Huddleston*, 164 S.W.3d 711, 716 (Tex. App.–Austin 2005, no pet.).

## C.    Analysis

This case is analogous to *Fowler v. State*, 266 S.W.3d 498 (Tex. App.–Fort Worth 2008, pet. ref'd). In *Fowler*, a police officer observed a truck "commit a traffic violation" by crossing "the white line, approximately a tire's width, and then it drifted over and touched the white line two more times." *Id*. at 501. Regarding whether the driver moved safely, the officer testified:

Q:    So nothing was dangerous about moving over that line?

A:    No vehicles were almost struck, so no.

. . . .

Q:    Okay. Did the vehicle commit any other traffic violations other than crossing that line one time?

A:    No.

Q:    Did you observe any incident that came close to causing an accident or was unsafe, in any manner, in that regard?

A:    No.

*Id.* at 501. In support of its assertion that the officer had reasonable suspicion to detain the driver, the State argued that the driver had violated section 545.060(a) of the transportation code, which provides:

(a)    An operator on a roadway divided into two or more clearly marked lanes for traffic:

    (1)    shall drive as nearly as practical entirely within a single lane; and

    (2)    may not move from the lane unless that movement can be made safely.

*See* TEX. TRANSP. CODE ANN. § 545.060(a) (Vernon 1999). The trial court denied the driver's motion to suppress and did not issue findings of fact. *Fowler*, 266 S.W.3d at 500. The Fort Worth Court of Appeals reversed, holding that the arresting officer failed to articulate specific facts supporting a reasonable suspicion that the driver had violated section 545.060(a). *Id*. at 505 (citing *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005)).

In this case, the State posited before the trial court that reasonable suspicion existed to stop Scardino because Trooper Harkins suspected a violation of section 545.058

of the transportation code and the "community caretaking function."[2]  *See* TEX. TRANSP.

CODE ANN. § 545.058(a) (Vernon 1999).  Section 545.058(a) provides that:

> [a]n operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
>
> (1)     to stop, stand, or park;
>
> (2)     to accelerate before entering the main traveled lane of traffic;
>
> (3)     to decelerate before making a right turn;
>
> (4)     to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
>
> (5)     to allow another vehicle traveling faster to pass;
>
> (6)     as permitted or required by an official traffic-control device; or
>
> (7)     to avoid a collision.

*Id*.  A review of the record in light of section 545.058 does not reveal a violation of that section because:  Trooper Harkins never testified that Scardino "drove" on the shoulder; the trial court did not find that Scardino "drove" on the shoulder; and a thorough review of the "dashcam" video does not show that Scardino "drove" on the shoulder.  Accordingly, the State could not rely on an alleged violation of section 545.058 as a basis for the stop.

As a second possible ground to support reasonable suspicion, the State posited that Trooper Harkins stopped Scardino because, under an officer's "community caretaking function," he feared for Scardino's safety.  On appeal, Scardino contends that there is no evidence to support the community caretaking exception.  The trial court did not conclude that Trooper Harkins exercised his community caretaking function in stopping Scardino.

---

[2] We note that Trooper Harkins never testified as to whether he perceived a violation of the transportation code.  Out of an abundance of caution, we, in our discretion, will nevertheless entertain the State's argument.

On the other hand, the trial court found that Scardino wove from the shoulder (fog) line, almost over the center line, and wove within his lane. We will, nevertheless, analyze whether the trial court's finding could support a detention under the community caretaking exception to the Fourth Amendment's reasonable suspicion requirement.

The court of criminal appeals has stated that a police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose. *See Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002) (citing *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App.1999)). In evaluating whether an officer reasonably believes that a person needs help, courts may look to a list of four non-exclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Id*. (citing *Wright*, 7 S.W.3d at 151).

The trial court's findings do not reveal a level of distress that would lead a reasonably prudent person to perceive that Scardino was distressed. Although the trial court did not issue findings regarding the location of the incident or whether other individuals were around, a review of the dashcam video shows that Scardino was detained near several convenience stores, and if suffering a serious medical illness, he could have easily pulled into one of the stores for assistance. Additionally, the video does not reveal that, if unassisted, Scardino presented a danger to himself or others. Applying the *Corbin* factors, we conclude that Trooper Harkins' alleged exercise of his community caretaking function was not reasonable. *See id*.; *see also White v. State*, No. 02-07-234-CR, 2008 WL 1867139, at *4 (Tex. App.–Fort Worth Apr. 24, 2008, pet. ref'd) (memo op., not

8

designated for publication). There is no indication that Scardino's allegedly erratic driving was because of a medical illness, as Trooper Harkins initially suspected. By his testimony, Trooper Harkins's focus was largely on Scardino's allegedly suspicious driving rather than on Scardino's health and welfare. The video supports this point because in it, Trooper Harkins does not ask Scardino about his health; instead, he immediately informs Scardino about weaving within his lane and conducts field sobriety tests. Accordingly, there is no evidence to support a stop under the community caretaking function exception.

We therefore hold that there was no reasonable suspicion for the initial stop and that the trial court erred by failing to suppress the evidence developed during the stop.[3] Scardino's sole issue is sustained.

## D.    Harm Analysis

Having sustained Scardino's sole issue, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. *See* TEX. R. APP. P. 44.2. The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment is Rule 44.2(a)'s constitutional standard. *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). Accordingly, we must reverse the trial court's judgment, unless we determine beyond a reasonable doubt that the error did not contribute to Scardino's conviction or punishment. TEX. R. APP. P. 44.2(a). The question is whether the trial court's denial of Scardino's motion to suppress and its admission of the evidence were harmless beyond a reasonable doubt. *See Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997). In applying the "harmless error" test, we ask whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v.*

---

[3] We note that Trooper Harkins never testified that, in observing Scardino's driving, he suspected Scardino was intoxicated and the State did not posit such an argument as a basis for reasonable suspicion. Because neither Trooper Harkins nor the State posited intoxication as a basis for reasonable suspicion, we will not analyze that issue. *Cf. Curtis v. State*, 328 S.W.3d 376, 377-78 (Tex. Crim. App. 2007) (analyzing, in an appeal dealing with suppression of evidence of driving while intoxicated, only the grounds for reasonable suspicion that were raised by the State before the trial court and brought on appeal).

9

*State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

After carefully reviewing the record and performing the required harm analysis under Rule 44.2(a), we are unable to determine beyond a reasonable doubt that the error did not contribute to Scardino's conviction. *See Williams*, 958 S.W.2d at 195. The erroneous admission of the evidence obtained after the illegal stop formed the basis for Scardino's conviction; thus, Scardino was harmed by its admission.

## III. CONCLUSION

The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

_____
ROGELIO VALDEZ
Chief Justice

Publish. TEX. R. APP. P. 47.2(b)
Opinion delivered and filed
this the 26th day of August, 2009.

10