# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00728-CR

**Jonathon D. Powell, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM COUNTY COURT AT LAW NO. 2 OF BELL COUNTY**
**NO. 2C08-06870, HONORABLE JOHN MISCHTIAN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Following the denial of his motion to suppress evidence, appellant Jonathon D. Powell pleaded nolo contendere to the offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West 2011). The trial court sentenced Powell to three days' confinement in county jail and a fine of $850.00. In a single issue on appeal, Powell asserts that the trial court abused its discretion in denying his motion to suppress. We will affirm the judgment.

## BACKGROUND

At the hearing on Powell's motion to suppress, the trial court heard evidence that in the early morning hours of July 27, 2008, at approximately 1:52 a.m., Officer Michael Heath of the Nolanville Police Department observed a black Ford Mustang unable to maintain a single lane of traffic while traveling eastbound on a one-way, two-lane portion of a divided roadway, U.S. Highway 190 in Belton. Specifically, Heath testified, "It was crossing the center . . . line

between the two lanes, as well as the outer lines of the roadway." Heath observed the vehicle cross the center line "a minimum of two times" and cross the outside (shoulder) line three times. Heath testified that the vehicle was driving on the shoulder of the road and had no permissible reason to do so, such as to make a right turn, to allow another vehicle to pass, or to avoid a collision. At one point, Heath also observed the vehicle change lanes without signaling. Heath's patrol car was in the right lane, while the other vehicle was in the left lane approximately 100 feet in front of the patrol car. Heath testified that there was other traffic on the roadway behind his patrol car at the time, but he characterized the traffic as "light."

Based on his observations, Heath believed the vehicle had committed the traffic offenses of failure to maintain a single lane, driving on the shoulder of the roadway, and failing to signal a lane change. These facts, in addition to the fact that he observed the vehicle at approximately 1:52 a.m. on a "Saturday night, Sunday morning," also led Heath to believe the driver of the vehicle was intoxicated. Heath did not immediately conduct a traffic stop. Instead, because Heath observed the vehicle driving in the city of Belton, he first "communicated with the Bell County Communications Center to advise for a Belton Unit to come and affect a traffic stop." Heath was advised "that all Belton Units were tied up at a major accident on I-35," so he asked for a Department of Public Safety (DPS) unit instead. However, DPS "was also out at the major accident" and was thus unavailable. Heath then decided to conduct the traffic stop himself. He did so after "getting on to I-35 . . . prior to Exit 297," which was "just inside Temple." After conducting the traffic stop, Heath identified the driver of the vehicle as Powell.[1]

---

[1] During Heath's testimony, a video recording of the traffic stop was admitted into evidence. Heath acknowledged that he did not turn on his video camera until after he had observed the failure

2

On cross-examination, Heath admitted that on his traffic report, he did not include the failure to signal a lane change. Heath also admitted that he had followed Powell for five or six miles before conducting the traffic stop. On redirect, Heath testified that he conducted the traffic stop out of concern for "public safety as well as the safety of the occupants in the vehicle." Heath added that he has had "many" experiences with intoxicated drivers in his years of experience as a certified peace officer.[2]

At the conclusion of the hearing, the trial court took the matter under advisement. Subsequently, the trial court denied the motion to suppress and entered written findings of fact and conclusions of law, including the following:

> The Court finds the testimony of Officer Michael Heath was uncontroverted and that no other witnesses offered testimony. The Court further finds that Officer Michael Heath is a credible witness and the Court accepts as true his testimony as the basis for conducting the traffic stop and arresting and questioning the Defendant, Jonathon Daniel Powell.
>
> The Court finds that the testimony of Officer Michael Heath demonstrated sufficient lawful basis for the arrest of the Defendant, Jonathon Daniel Powell. The Court finds Officer Heath had reasonable suspicion, based on articulable facts, that the Defendant had engaged in criminal conduct sufficient to legally stop the Defendant. . . .
>
> It is the Court's conclusion that the Defendant violated section 545.060 of the Texas Transportation Code by failing to maintain a single lane, violated section 545.058 of the Texas Transportation Code by unlawfully driving on an improved shoulder, and violated section 545.104 of the Texas Transportation Code

to maintain a single lane and that the alleged driving on the shoulder of the roadway was also not visible on the recording. However, Heath testified that the failure to signal a lane change was visible on the recording.

[2] At the time of the hearing, Heath testified that he had approximately ten years' experience. At the time of the traffic stop, Heath testified that he had approximately eight years' experience.

3

by failing to signal his lane change. The court thus concludes that Officer Heath had legal authority to conduct a traffic stop and detain the Defendant.

The Court further finds, based upon the record, that Officer Heath was justified in making an investigatory stop because Heath had a reasonable suspicion that the Defendant was driving while intoxicated.

The Court further finds, based upon the record, specifically Officer Heath's testimony that Heath felt the vehicle posed a threat to the safety of the public and the occupants, that the stop was reasonable in accordance with the community caretaker function.

After Powell's motion to suppress was denied, he pleaded nolo contendere to driving while intoxicated and was sentenced to three days in jail as noted above. This appeal followed.

**STANDARD OF REVIEW**

"A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). "'In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case.'" *Id.* (quoting *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008)). We reverse the ruling "only if it is outside the zone of reasonable disagreement." *Dixon*, 206 S.W.3d at 590. "In reviewing a trial court's ruling on a motion to suppress, appellate courts must view all of the evidence in the light most favorable to the trial court's ruling." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

When a trial court makes explicit fact findings, as it did here, the appellate court determines whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports these fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006); *Figueroa*

4

*v. State*, 250 S.W.3d 490, 508 (Tex. App.—Austin 2008, pet. ref'd). We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 818; *Figueroa*, 250 S.W.3d at 508.

## ANALYSIS

In his sole issue on appeal, Powell asserts that the trial court abused its discretion in denying his motion to suppress because, in Powell's view, the trial court "made erroneous interpretations of the evidence presented by the State concerning [the] basis of the stop of appellant's motor vehicle." Powell essentially makes two arguments as to why the traffic stop was illegal. First, he attacks each of the alleged traffic violations that formed the basis for the traffic stop and asserts that what Heath observed prior to the stop were not actual traffic violations. Second, he contends that the stop was impermissible based on what Powell characterizes as an excessive delay between the observation of the alleged traffic violations and the stop of Powell's vehicle.

An officer may initiate a traffic stop if he reasonably suspects that the driver has violated the law. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). In making this determination, we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530.

5

We first address Powell's contention that Heath did not observe actual traffic violations. Powell asserts that he did not commit the offense of failure to maintain a single lane because there was no traffic in the vicinity of his vehicle and, therefore, his movement was not unsafe. *See* Tex. Transp. Code Ann. § 545.060(a) (West 2011) (providing that driver "shall drive as nearly as practical entirely within a single lane and may not move from the lane unless that movement can be made *safely*" (emphasis added)); *Fowler v. State*, 266 S.W.3d 498, 504-05 (Tex. App.—Fort Worth 2008, pet. ref'd) (reversing trial court's denial of motion to suppress because there was no evidence that defendant's failure to maintain single lane was done unsafely). Similarly, Powell claims that he did not commit the offense of driving on an improved shoulder "because there was no evidence that Appellant drove on the improved shoulder," as prohibited by the transportation code. *See* Tex. Transp. Code Ann. § 545.058(b) (West 2011); *Scardino v. State*, 294 S.W.3d 401, 406 (Tex. App.—Corpus Christi 2009, no pet.) (reversing trial court's denial of motion to suppress because officer never testified that defendant drove on shoulder of roadway). Finally, Powell asserts that Heath did not actually observe him failing to signal a lane change because he did not include it in his written report. Instead, Powell claims, Heath observed it for the first time while viewing the recording of the traffic stop in court and "added it to his testimony at the hearing."

First, contrary to the inferences that Powell draws from the evidence, the record supports the trial court's explicit fact findings that Powell committed certain traffic violations. Regarding the offense of failure to maintain a single lane, although Heath testified that traffic was "light," he also testified that there were cars behind his patrol car. Thus, because there was traffic in the vicinity of Heath's patrol car, and because Heath testified that his patrol car was

6

only approximately 100 feet behind Powell's vehicle, the trial court did not abuse its discretion in finding that Powell committed the traffic offense of failure to maintain a single lane. *See Cook v. State*, 63 S.W.3d 924, 928 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (concluding that officer was not required to wait to initiate traffic stop "until appellant placed himself or others in immediate peril as a result of his erratic driving"). Regarding the offense of unlawfully driving on an improved shoulder, Heath testified that he observed Powell's vehicle drive "four to five inches" into the shoulder of the roadway. Thus, there was at least some evidence in the record supporting the trial court's finding that Powell committed that offense. Finally, simply because Heath did not include in his written report the offense of failure to signal a lane change does not mean that he did not observe it. Heath testified that he did observe Powell commit that offense, and the trial court did not abuse its discretion in finding Heath's testimony to be credible.

Moreover, in the cases to which Powell cites in his brief, the officers testified that the reason they conducted the traffic stop was because of a particular traffic violation, and the record did not support a finding that such a traffic violation had occurred. In this case, in contrast, although Heath testified that he believed Powell had committed the above traffic offenses, he also testified that he conducted the traffic stop because he believed, based on everything he had observed, that Powell was driving while intoxicated. In fact, one of the trial court's explicit findings was that, "based upon the record . . . Officer Heath was justified in making an investigatory stop because Heath had a reasonable suspicion that the Defendant was driving while intoxicated." Thus, our inquiry is whether the record supports the trial court's finding that, based on the totality of the circumstances, Heath had reasonable suspicion to believe Powell was driving while intoxicated. *See Ramos*, 245 S.W.3d at 418 (appellate court must uphold trial court's ruling "if it is reasonably

7

supported by the record and is correct under any theory of law applicable to the case"). We conclude that it does. The evidence of erratic driving, summarized above, along with the additional evidence that the driving was occurring on a Sunday morning at approximately 1:52 a.m. and that Heath had observed "many" intoxicated drivers in his years of experience as a peace officer, would support the trial court's finding that Heath had reasonable suspicion to believe that Powell was driving while intoxicated. *See Curtis v. State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2008) (upholding reasonableness of traffic stop on similar facts); *Gajewski v. State*, 944 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (concluding, on similar facts, that even though driver might not have committed traffic offense did not mean that officer lacked reasonable suspicion to believe driver was intoxicated).

As for Powell's argument that Heath waited for an unreasonable length of time before conducting the traffic stop, the trial court made no specific findings regarding the delay. However, in the absence of such findings, we are to assume the trial court made implied findings necessary to support its ultimate ruling as long as the implied findings are supported by the record. *See Turner v. State*, 261 S.W.3d 129, 133 (Tex. App.—San Antonio 2008, no pet.) (when appellant failed to request additional or supplemental findings on contested issue of delay in initiating traffic stop, reviewing court implied findings that were necessary to support trial court's ruling); *see also Valtierra v. State*, 310 S.W.3d 442, 449 (Tex. Crim. App. 2010) (stating that "[d]espite the lack of an explicit factual finding" on contested fact issue, reviewing courts "still must view the totality of the facts in the light most favorable to the trial court's ultimate ruling"). As support for his contention that the delay was unreasonable, Powell relies on *State v. Dixon*, 151 S.W.3d 271 (Tex. App.—Texarkana 2004), *aff'd*, 206 S.W.3d 587 (Tex. Crim. App. 2006). In that case, the

court of appeals concluded "the distance or length of time the officer followed the vehicle" prior to conducting a traffic stop "is clearly a matter to be considered when a court is deciding whether a traffic stop is reasonable." *Id*. at 274. The court concluded that the delay in that case, 3.2 miles, was unreasonable. *Id*. However, the court emphasized, "We do not hold that a delay of this distance will always be unreasonable. In each such instance, the court should properly consider all of the factors surrounding the stop." *Id*. at 275.[3]

In this case, Heath conducted the traffic stop after following Powell for approximately five to six miles. However, Heath attributed the delay to his attempts to get a unit from Belton or DPS to conduct the traffic stop. Even though Heath could have conducted the traffic stop himself, the trial court could have impliedly found that this was a reasonable justification for the delay. *See* Tex. Code Crim. Proc. Ann. art. 14.03 (West Supp. 2010) (describing jurisdictional requirements for officers making arrests); *see also Turner*, 261 S.W.3d at 133-34 (concluding that record supported finding by trial court that any delay in stopping defendant was not unreasonable under circumstances). Moreover, as the State observes, although the stop occurred several miles after the initial traffic violations were observed, the trial court could have reasonably inferred from Heath's testimony that the stop occurred shortly after he observed the final traffic violation, failure to signal a lane change. Finally, as the *Dixon* court observed, the length of the delay is just one of many factors that courts should consider in determining the reasonableness of the stop and

---

[3] Upon review, the court of criminal appeals observed that the issue presented in the case was not the amount of time or distance between the alleged traffic violation and the traffic stop. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Instead, "[i]t is clear from the hearing that the trial judge simply did not believe that the driver in this case committed a traffic offense . . . ." *Id*. The timing concern was just one factor considered by the trial court. *See id*. at 191.

that in each case, "the court should properly consider all of the factors surrounding the stop." *Dixon*, 151 S.W.3d at 275 (citing *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002)). Here, the trial court concluded that Heath's detention and arrest of Powell was lawful and that Heath had reasonable suspicion to believe that Powell was driving while intoxicated. In so concluding, the trial court implicitly found that any delay in stopping Powell after Heath's initial observations of Powell's driving was not unreasonable. The record, as summarized above, supports this finding. Accordingly, we cannot conclude that the trial court abused its discretion in denying the motion to suppress.

We overrule Powell's sole issue on appeal.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   September 14, 2011

Do Not Publish

10