

NUMBER 13-13-00389-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JOSEPH CHARLES COUCH,**                                            **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                            **Appellee.**

---

### On appeal from the County Court at Law of Aransas County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

A jury found Joseph Charles Couch guilty of driving while intoxicated ("DWI"), *see* TEX. PENAL CODE ANN. § 49.04(a) (West 2011), and he now appeals his conviction by one issue in which he contends that the trial court erred in denying his pretrial motion to suppress the evidence of the traffic stop that led to his arrest, prosecution, and conviction.

*See* U.S. CONST. amend. IV; TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West Supp. 2012). For the reasons set forth below, we overrule Couch's sole issue and affirm the judgment of the trial court.

## I. BACKGROUND

Couch filed a pretrial motion to suppress in which he argued that the arresting officer detained him without reasonable suspicion in violation of the Fourth Amendment to the United States Constitution. *See* U.S. CONST. amend. IV; TEX. CODE CRIM. PROC. ANN. art. 38.23(a). The trial court held a pretrial hearing on the motion to suppress. *See* TEX. CODE CRIM. PROC. ANN. art. 28.01, § 1(6) (West 2006).

The arresting officer, Trooper Andrew Smith of the Texas Department of Public Safety, was the sole witness to testify. Smith testified that at approximately 10:30 p.m. on June 2, 2012, he was on routine patrol along Highway 35 near Lamar, Texas when he observed Couch, who was driving a pickup truck, pull out of the parking lot of a bar and proceed southbound on the highway. Smith testified that he observed Couch driving from side to side within his lane of traffic and then cross the fog line with his right tires, thereby encroaching onto the improved shoulder of the highway momentarily. Smith suspected that Couch had violated Section 545.058(a) of the Texas Transportation Code, which prohibits the operation of a motor vehicle on an improved shoulder of a roadway unless doing so is necessary and may be done safely and the circumstances fit within one of the seven statutory exceptions for driving on an improved shoulder. *See* TEX. TRANSP. CODE ANN. § 545.058(a) (West 2011).

A visual and audio recording of the traffic stop, including Couch's driving prior to the stop, was made by the equipment in Smith's patrol car and admitted into evidence at

2

the hearing on Couch's motion to suppress. Smith testified that he could not see the alleged traffic violation on the recording because of the poor lighting, the location of the camera, and the overall low quality of the recording.[1] However, he confirmed seeing the violation in person, believed Couch's swerving was abnormal, and stated that crossing over the fog line onto the improved shoulder was dangerous and posed a hazard to anyone who could have been walking on the shoulder. Smith testified that based on the foregoing, he initiated a traffic stop and subsequently determined that Couch was intoxicated.

Couch argued that the State had failed to prove that Smith had reasonable suspicion to effectuate the traffic stop because the visual recording from the camera in Smith's patrol car did not show Couch encroaching onto the improved shoulder of the highway. The State maintained that Smith's visual observation at the time of the alleged offense was sufficient to establish reasonable suspicion. After hearing the evidence and arguments of counsel, the trial court entered a written order denying Couch's motion to suppress. The case was then set for a jury trial.

In their opening statements at trial, counsel for the State and for Couch both emphasized that the central issue at trial would be the legality of the traffic stop and the application of the statutory exclusionary rule. *See* U.S. CONST. amend. IV; TEX. CODE CRIM. PROC. ANN. art. 38.23(a).[2] Again, the only witness who testified was Smith, who

---

[1] We have reviewed the visual recording and have also been unable to confirm the alleged traffic violation due to the low level of light, the distance between the camera and Couch's vehicle, and the poor quality of the visual recording.

[2] In her opening statement, the prosecutor stated in relevant part as follows:

I think a lot is going to be made on this case not so much as to whether or not he actually was driving while intoxicated but whether or not the trooper had reason to believe a traffic offense had occurred and that presented probable cause and that he was entitled to make

3

explained in greater detail the personal observations that caused him to believe that Couch was driving abnormally by "swerving" within his lane of traffic, had committed a traffic violation by driving on the improved shoulder of the highway, and was possibly fatigued or intoxicated. *See* TEX. TRANSP. CODE ANN. § 545.058(a). Smith also testified that Couch's driving was unsafe due to the darkness, limited lighting, residential nature of the area, and danger posed to anyone who could have been walking on the improved shoulder of the highway.

In addition, State's Exhibit 1, the audio and visual recording of the traffic stop, was offered into evidence. The trial court asked counsel for Couch, "Are you going to object to the admissibility of the video?" Couch's attorney replied, "No, sir." The trial court then asked counsel, "Or the recording?" And again, Couch's attorney replied, "No, sir." The court then stated that State's Exhibit 1 was "admitted over no objection from . . . [Couch's attorney]." The court repeated, "State's Exhibit 1, which is the video recording, is admitted over no objection from . . . [Couch's attorney]."

In his testimony, Smith described the video recording as "blurry." Smith testified that from his vantage point inside his patrol car, he "absolutely" could "see clearer than" the video—that his vision was "clear and sharp." Smith then testified as follows:

---

the stop of the vehicle.

Couch's attorney "concur[red] with what . . . [the prosecutor] had to say." In his opening statement, he framed the issue as follows:

> The question that you're going to have to resolve and I believe the evidence will show you is that there is no[] proof that there was probable cause to stop Mr. Couch. That the alleged traffic offense of driving over the fog line would not be proved to you beyond a reasonable doubt - - and, in fact, you will get to see a video tape where you cannot see the evidence will show him driving over the fog line at all. . . . We submit to you careful review of the video tape, careful review of previous testimony and whatever testimony the trooper will testify to today, there will not be any evidence beyond a reasonable doubt that Mr. Couch did commit that traffic violation.

4

As I'm patrolling, I'm still continuing to observe the vehicle. And this is during the time where it goes within his lane. And right here, he's - - the word, I guess, would be swerving from his left into right.

And this really isn't normal from the general motoring public. The normal motoring public from the several cars that I see daily aren't going from the left side of the lane to the right side of the lane to the left. It's not normal driving behavior. It is an indicator that possibly he may be tired. He may be exhausted. It is an indicator for possible intoxication. But it does bring my attention to the vehicle. And here in just a little bit - - play it for a minute.

Okay. Now, if you stop here, you can still see - - he's about .1 mile in front of my patrol unit. But you can still see it very clearly if it was through your own eyes, I guess, not through the video. But this fog line goes up. And just up to the right, there is a roadway sign with the city. And as it comes up, you can see it in the video, it kind of blocks out the city sign. And that's whenever his tires do cross over the fog line. And then it comes back on in the picture. . . . But when you're reviewing the video, you can't clearly see it because of the quality of it. So that road sign is used as a reference that this is the area where it did occur.

However, Smith admitted, "You can't see it [referring to the violation] on the video."

As the video was playing for the jury, Smith explained that he observed "cues or clues" of intoxication, such as "bloodshot, watery eyes" and the "odor of an alcoholic beverage emitting from the driver," when he initially encountered Couch on the side of the road. Smith also testified that Couch provided a breath sample, showing a breath-alcohol concentration of .201. *See* TEX. PENAL CODE ANN. § 49.04(d) ("If it is shown on the trial of an offense under this section that an analysis of a specimen of the person 's blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed, the offense is a Class A misdemeanor."). When the State offered the printed result into evidence, Couch's attorney stated, "No objection." The trial court admitted the exhibit into evidence.

After both sides rested and made no objection to the jury charge, the case was submitted to the jury. The jury found Couch guilty of DWI. *See id.* § 49.04(a). During the

punishment phase of trial, Couch pleaded true to an enhancement paragraph, which alleged a prior conviction for DWI.  *See id.* § 49.09(a) (West 2011) ("[A]n offense under Section 49.04 . . . is a Class A misdemeanor, with a minimum term of confinement of 30 days, if it is shown on the trial of the offense that the person has previously been convicted one time of an offense relating to the operating of a motor vehicle while intoxicated . . . ."). The trial court assessed punishment at confinement for one year in county jail, probated for one year, and a $2,500 fine. After sentencing, the trial court informed Couch that he had the "right to appeal this decision of the jury and any error that you think the Court may have made."

## II. Motion to Suppress

In his one issue, Couch argues that "the trial court erred by violating Article 38.23(a) of the Texas Code of Criminal Procedure and denying . . . [his] motion to suppress."  *See* Tex. Code Crim. Proc. Ann. art. 38.23(a). In response, the State contends that Couch waived any error in the denial of his pretrial motion to suppress when at trial he failed to object to Smith's testimony and the admission of State's Exhibit 1, the audio and visual recording from Smith's patrol car.  *See* Tex. R. App. P. 33.1(a)(1). The State acknowledges that a party "preserves an issue for consideration on direct appeal by obtaining an adverse ruling on the issue through a pretrial motion to suppress evidence."  *See* Tex. R. Evid. 103(a). However, the State maintains that "an affirmative statement by a defendant that he has 'no objection' to the admission of that same evidence, when offered at trial, may constitute a waiver of the right to raise the issue on direct appeal."  *See Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013) ("Our case law makes it clear that a statement of 'no objection' when the complained-of

6

evidence is eventually proffered at trial—at least, without more—will signal to the trial court an unambiguous intent to abandon the claim of error that was earlier preserved for appeal.").

## A. Waiver

"The question in this case is not whether error has been preserved." *Id.* at 883. Couch "obtained an adverse ruling on . . . [his] pretrial motion to suppress, and nothing more is necessary to permit . . . [him] to raise that adverse ruling on direct appeal." *Id.* at 884. "Instead, the question is whether, having once preserved . . . [his] appellate claim of error in this manner, [Couch] . . . took some affirmative action later that served to forfeit it." *Id.* Prior "case law makes it clear that a statement of "no objection" when the complained-of evidence is eventually proffered at trial—at least, without more—will signal to the trial court an unambiguous intent to abandon the claim of error that was earlier preserved for appeal." *Id.* However, the Texas Court of Criminal Appeals has directed the intermediate courts of appeals in this state to "apply the 'no objection' waiver rule with . . . flexibility." *Id.* at 885. "Particularly when a defendant has taken pains to file a pretrial motion to suppress, develop testimony at a hearing, and secure an appealable adverse ruling, it is unrealistic to presume that he would lightly forego the opportunity to vindicate his interests on appeal." *Id.* "No purpose is served by insisting that earlier-preserved error is abandoned by a later statement of 'no objection' when the record otherwise establishes that no waiver was either intended or understood." *Id.* Therefore, "the rule that a later statement of 'no objection' will forfeit earlier-preserved error is context-dependent." *Id.*

The Texas Court of Criminal Appeals has explained as follows:

[A]ppellate court[s] should not focus exclusively on the statement itself, in isolation, but should consider it in the context of the entirety of the record. If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal, then the appellate court should not regard the claim as "waived," but should resolve it on the merits. On the other hand, if from the record as a whole the appellate court simply cannot tell whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the "no objection" statement to be a waiver of the earlier-preserved error. Under the latter circumstances, the affirmative "no objection" statement will, by itself, serve as an unequivocal indication that a waiver was both intended and understood.

*Id.* at 885–86.

The State contends that the record in this case is "at best . . . ambiguous," which would mean that under *Thomas* the statement of "no objection" waived the issue previously preserved by the trial court's ruling on Couch's pretrial motion to suppress. *See id.* The State contends further that this Court should take into consideration the fact that the pretrial motion to suppress was heard and decided by Judge Stephen Williams, whereas the case was tried before Judge William Adams. According to the State, Couch could have had the motion to suppress "reconsidered" by the "new judge," but he failed to do so. Finally, the State points out that at trial the new judge specifically questioned Couch's attorney about whether he was going to object to the admission of the evidence at issue when it was offered by the State and counsel responded "several times" that he had "no objection."

In this case, the alleged error that Couch preserved by the trial court's ruling on his motion to suppress was whether Smith violated his rights under the Fourth Amendment to the United States Constitution by initiating the traffic stop. *See* U.S. CONST. amend. IV. If Couch's rights were violated, then he was entitled to have the evidence excluded

8

from trial. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a). The trial court denied Couch's pretrial motion to suppress; however, that ruling was not one that "admits or excludes" evidence. *See* TEX. R. EVID. 103(a). The court merely denied Couch's request to exclude the evidence based on the alleged Fourth Amendment violation. *See* U.S. CONST. amend. IV. The ruling preserved the issue of whether the trial court erred in failing to exclude the evidence on the basis of the alleged Fourth Amendment violation. *See* TEX. R. APP. P. 33.1(a)(1). However, the court did not rule that the evidence was admissible or admit the evidence at that time, as the record plainly shows. Thus, at trial, Couch was free to raise other objections to the admissibility of the evidence, for example, to its relevance, its unfairly prejudicial effect, the State's failure to authenticate it, or other grounds for exclusion. *See* TEX. R. EVID. 401, 402, 403, 901(a). By stating he had "no objection," Couch's attorney clearly signaled to the trial court and to the prosecutor that he was not asserting any such objections to the evidence. Yet, that does not mean he necessarily intended to forfeit the issue preserved by the ruling on his pretrial motion to suppress. *See Thomas*, 408 S.W.3d at 885 ("[A]ppellate court should not focus exclusively on the statement itself, in isolation, but should consider it in the context of the entirety of the record.").

On the contrary, viewing the trial as a whole, it is clear that from his opening statement through closing argument, Couch's counsel was asserting and attempting to establish a violation of the Fourth Amendment such that the jury would be barred from considering the State's evidence and an acquittal would be thereby secured. *See* U.S. CONST. amend. IV. The trial court understood as much and placed an instruction in the

jury charge on the Texas statutory exclusionary rule. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a). In relevant part, the jury charge provided as follows:

> [I]f you believe that from the evidence beyond a reasonable doubt that Trooper Andrew Smith acquired probable cause to believe and did believe that a traffic offense was committed, namely, driving on an improved shoulder . . . , then you may consider the evidence obtained by the officer from the stop and the arrest of the Defendant, Joseph Charles Couch.
>
> If you do not so find beyond a reasonable doubt, then you will wholly disregard such evidence in the stop and arrest of the Defendant, Joseph Charles Couch, or if you have a reasonable doubt as to such matters, you will disregard such evidence and said stop and arrest and not consider it as any evidence whatsoever, and say by your verdict, "Not guilty."

Based on the foregoing, we conclude that Couch did not waive his challenge to the trial court's ruling on his pretrial motion to suppress. *See Thomas*, 408 S.W.3d at 885 ("If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his 'no objection' statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal, then the appellate court should not regard the claim as 'waived,' but should resolve it on the merits."). The record is clear that Couch did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of the claim of error that he had earlier preserved for appeal. *See id.* Accordingly, we proceed to address the merits of Couch's appeal. *See id.*

## B. Standard of Review

"The appropriate standard for reviewing a trial court's ruling on a motion to suppress evidence was articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997)." *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). "In that Fourth Amendment case, the Court indicated that it would apply a bifurcated standard of review, giving 'almost total deference to a trial court's determination of historical facts' and

reviewing de novo the court's application of the law of search and seizure." *Id.* (quoting *Guzman*, 955 S.W.2d at 88–89).

"In the case at bar, the trial court did not make explicit findings of historical fact." *Id.* at 327–28. "We therefore review the evidence in a light most favorable to the trial court's ruling." *Id.* at 328. "In other words, we will assume that the trial court made implicit findings of fact supported in the record that buttress its conclusion." *Id.* "We will review de novo the lower court's application of the relevant Fourth Amendment standards." *Id.*

## C. Applicable Law

"Reasonable suspicion of criminal activity permits a temporary seizure for questioning that is limited to the reason for the seizure." *Wade v. State*, No. PD–1710–12, 2013 WL 4820299, at *3 (Tex. Crim. App. Sept. 11, 2013); *Scardino v. State*, 294 S.W.3d 401, 405 (Tex. App.—Corpus Christi 2009, no pet.) ("A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion.") (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). "A police officer has reasonable suspicion for a detention if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Wade*, 2013 WL 4820299, at *3; *Scardino*, 294 S.W.3d at 405. "This is an objective standard that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Wade*, 2013 WL 4820299, at *3.

"The standard also looks to the totality of the circumstances; individual circumstances may seem innocent enough in isolation, but if they combine to reasonably

11

suggest the imminence of criminal conduct, an investigative detention is justified." *Id.* "It is enough to satisfy the lesser standard of reasonable suspicion that the information is sufficiently detailed and reliable—i.e., it supports more than an inarticulate hunch or intuition—to suggest that something of an apparently criminal nature is brewing." *Id.*

## D. Discussion

Couch argues that the trial court erred in denying his motion to suppress because "there was no probable cause for the stop." For the reasons that follow, we conclude that the trial court did not err in denying the motion to suppress.

First, although "[i]t is the State's burden to prove that a warrantless detention was lawful," *Scardino*, 294 S.W.3d at 405, "[t]he State does not have to establish with absolute certainty that a crime occurred." *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). "In this case, the State was required to show that the officer had reasonable suspicion that . . . [Couch] committed . . . [a] traffic violation." *Id.* Reasonable suspicion is a lower standard than probable cause. *See Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) ("The Fourth Amendment bridles the government's power to invade a person's privacy by requiring that searches and seizures customarily be supported by a showing of probable cause. The lower standard of reasonable suspicion is derived from the probable cause standard and applies only to those brief detentions which fall short of being full scale searches and seizures."). Thus, Couch is incorrect in asserting that the detaining officer was required to have probable cause to initiate the traffic stop. *See Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991) ("It has been an accepted part of state and federal jurisprudence for many years that law enforcement officers may

stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest.").

Second, it is a violation of the traffic code to operate a motor vehicle on the improved shoulder of a roadway unless doing so (1) is "necessary," (2) "may be done safely," and (3) the circumstances fit within one of the seven statutory exceptions for driving on an improved shoulder. *See* TEX. TRANSP. CODE ANN. § 545.058(a)(1)–(7).

Third, Smith testified unequivocally that he observed Couch driving on the improved shoulder of the highway. We acknowledge that State's Exhibit 1, the audio and visual recording from Smith's patrol vehicle, does not show Couch crossing the fog line and encroaching onto the improved shoulder of the highway; however, the recording does not show the opposite. It does not establish that Couch did not drive on the improved shoulder of the highway. Therefore, the trial court, as the finder of fact at the hearing on the motion to suppress, could have found Smith's testimony to be credible despite State's Exhibit 1, particularly in light of the poor lighting and overall low quality of the visual recording, the placement of the camera, and the distance between the two vehicles, which Smith estimated was roughly one-tenth of a mile. *See Carmouche*, 10 S.W.3d at 327.

Fourth, "[w]e consider the totality of the circumstances at the time of the detention to determine whether a reasonable suspicion existed to justify the officer's action." *State v. Duran*, 396 S.W.3d 563, 569 (Tex. Crim. App. 2013). Smith testified that he observed Couch drive from side to side within his lane of traffic immediately before crossing onto the improved shoulder of the highway. Based on this observation and the other circumstances described by Smith in his testimony and depicted in the visual recording from his patrol car, an officer in Smith's position could have formed an objectively

13

reasonable belief that Couch's driving on the improved shoulder of the highway was inadvertent or accidental, and therefore unnecessary and unsafe, and thus a traffic violation. *See* TEX. TRANSP. CODE ANN. § 545.058(a). In addition, Smith also testified, and State's Exhibit 1 supported the conclusion, that Couch's conduct did not fit within any of the seven exceptions for driving on the improved shoulder of a roadway.[3] Thus, even if Couch's conduct in driving on the improved shoulder of the roadway was "necessary" or done "safely," it was still reasonable for Smith to conclude that Couch had violated the traffic code provision because Couch's conduct did not fall with any of the seven exceptions for driving on the improved shoulder of a roadway. *See id.* § 545.058(a)(1)– (7).

In sum, the controlling question is based on an objective standard: "Would a reasonable officer in the same situation believe a crime had been or was being committed?" *Duran*, 396 S.W.3d at 569. We conclude that the evidence rises above a

---

[3] In relevant part, the transportation code provides as follows:

DRIVING ON IMPROVED SHOULDER. (a) An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:

(1) to stop, stand, or park;

(2) to accelerate before entering the main traveled lane of traffic;

(3) to decelerate before making a right turn;

(4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;

(5) to allow another vehicle traveling faster to pass;

(6) as permitted or required by an official traffic-control device; or

(7) to avoid a collision.

*See* TEX. TRANSP. CODE ANN. § 545.058(a)(1)–(7).

14

mere hunch or suspicion that Couch had committed a traffic violation.[4]  Smith articulated specific facts, which if believed, would allow an officer in the same position to form a reasonable belief that Couch had committed a traffic violation by driving on the improved shoulder of the highway in a manner that was unnecessary, unsafe, and not within any of the seven statutory exceptions for driving on the improved shoulder of a roadway.  *See id.*  Although Couch argues that this case should be decided based on this Court's previous decision in *Scardino*, we conclude that the cases are easily distinguishable because the detaining officer in *Scardino* "never testified that Scardino 'drove' on the shoulder.'"  *Scardino*, 294 S.W.3d at 406.  In fact, the detaining officer "never testified as to whether he perceived a violation of the transportation code."  *Id.* at 406 n.2.  "Accordingly, [in *Scardino*,] the State could not rely on an alleged violation of section 545.058 as a basis for the stop."  *Id.* at 406.  In contrast, in this case, Smith testified that he observed Couch driving on the improved shoulder of the highway in a manner that was unnecessary, unsafe, and not within any of the seven statutory exceptions for driving on the improved shoulder of a roadway.  *See* TEX. TRANSP. CODE ANN. § 545.058(a)(1)–(7).  Therefore, Smith had reasonable suspicion to believe that Couch had committed a violation of the transportation code in his presence.  *See Duran*, 396 S.W.3d at 569.  Accordingly, the trial court did not err in denying Couch's motion to suppress.  *See*

---

[4]  *See Delafuente v. State*, No. PD–0066–13, 2013 WL 6182437, at *3 (Tex. Crim. App. Nov. 27, 2013) ("Reasonable suspicion requires more than a hunch; it exists only when an officer has specific, articulable facts that, taken together with reasonable inferences from those facts, would lead the officer to reasonably conclude that the person detained is, has been, or soon will be, engaging in criminal activity."); *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005) (noting that reasonable suspicion determination is based on "specific, articulable facts"; standard is an objective one and "disregards any subjective intent" of officer making stop); *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) ("Texas courts require reasonable suspicion before a seizure of the person or property can occur.").

*McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993) ("[A]n officer may lawfully stop and detain a person for a traffic violation."). We overrule Couch's sole issue.

### III. CONCLUSION

The judgment of the trial court is affirmed.


NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
13th day of February, 2014.