ACCEPTED
14-15-00612-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
12/31/2015 11:53:19 AM
CHRISTOPHER PRINE
CLERK

No. 14-15-00612-CR

IN THE COURT OF APPEALS
FOURTEENTH DISTRICT
HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

12/31/2015 11:53:19 AM

CHRISTOPHER A. PRINE
Clerk

QUINTON JONES,
Appellant

Vs.

THE STATE OF TEXAS,
Appellee

ON APPEAL FROM CAUSE NO. 74300
412th JUDICIAL DISTRICT COURT, BRAZORIA COUNTY, TEXAS
HONORABLE EDWIN DENMAN JUDGE PRESIDING

BRIEF FOR THE APPELLANT

Joseph Kyle Verret
THE LAW OFFICE OF KYLE VERRET, PLLC
Counsel for Appellant
TBN: 240429432
11200 Broadway, Suite 2743
Pearland, Texas 77584
Phone: 281-764-7071
Fax: 281-764-7071
Email: kyle@verretlaw.com

ATTORNEY FOR APPELLANT          ORAL ARGUMENT REQUESTED
DATE:  DECEMBER 31, 2015

No. 14-15-00612-CR

IN THE COURT OF APPEALS
FOURTEENTH DISTRICT
HOUSTON, TEXAS


QUINTON JONES,
Appellant

Vs.

THE STATE OF TEXAS,
Appellee


BRIEF FOR THE APPELLANT


TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

QUINTON JONES, the Defendant in Cause 74300 in the 412th JUDICIAL

DISTRICT COURT, Brazoria County, Texas, respectfully submits this brief, and

would respectfully show the Court the following:

# TABLE OF CONTENTS

Parties to the Case…………………………………………………………..……5

List of Authorities…………………………………………………………..……6

Statement of the Case………………………………………………………....9

Statement Regarding Oral Argument……………………………….…..…....9

Issues Presented………………………………………………………………...10

Summary of the Argument…………………………………………..………….11

Statement of Facts……………………………………………………………....13

 Motion to Suppress Hearing……………………………………….…13

  Testimony of Mike Glaspie.. …………………………………..…13

  State's Exhibit 1…………………………………………..……15

 Testimony at Guilt / Innocence Phase of Trial……………………..…19

  Testimony of Mike Glaspie…………………………….....…..19

  Testimony of Haleigh Balser………………………….…….21

  Testimony of Tahika Johnican…………………….……21

 Testimony at Punishment Phase of Trial………………………….....23

  Testimony of Carrie Bullard………………………….……..23

Appellant's First Point of Error……………………………………………..24

*The trial court erred by denying Appellant's motion to suppress. The officer who conducted a traffic stop of the vehicle operated by Appellant lacked reasonable suspicion of any traffic violation or other criminal activity.*

Standard of Review and Applicable Law…………………………………………24

    Relevant Facts………………………………………………………..26

    Analysis…………………………………………………………27

        The Stop Was Warrantless………………………………………..27

        Glaspie Lacked Reasonable Suspicion or Probable Cause of A Traffic Violation for Failure to Maintain a Single Lane………………..28

        Glaspie Lacked Reasonable Suspicion or Probable Cause of A Traffic Violation for Driving on an Improved Shoulder………………..…29

        Glaspie Lacked Reasonable Suspicion That Appellant Was Intoxicated…………………………………………………….33

        Suppression………………………………….………………37

        Harm……………………………………………….…38

Appellant's Second Point of Error………………..………………………...….40

*The trial court erred by denying Appellant's motion to suppress. The detention of Appellant was unreasonably prolonged past the time reasonably necessary to satisfy the purpose of the traffic stop. The continued detention of Appellant after warrant checks were complete, and alternatively, once the passenger with warrants in the vehicle was arrested, was an unreasonable seizure.*

    Standard of Review and Applicable Law…………………….………40

    Relevant Facts………………………………………………………..41

    Analysis…………………………………………………………42

        Consent………………………………………………...………..47

        Suppression…………………………………………………..49

        Harm……………………………………………….…49

Appellants Third Point of Error……………….……………………….…..52

*If this Court finds that the trial court erred by denying Appellant's motion to suppress, this Court should find that the evidence remaining, after excluding the suppressible evidence, is legally insufficient to sustain the conviction against Appellant for possession of a controlled substance.*

Standard of Review and Applicable Law……………………….….…52

Relevant Facts……………………………………………………….…..53

Analysis……………………………………………………………………53

Appellants Fourth Point of Error……………………………………….……..56

*The trial court was not rationally justified in finding beyond a reasonable doubt that Appellant possessed a controlled substance as alleged in the indictment. Deferring to the trial court's rational resolution of conflicting evidence, the evidence admitted at trial did not support a conclusion that Appellant committed possession of a controlled substance.*

Standard of Review and Applicable Law………………………..….….56

Relevant Facts……………………………………………………….……..57

Analysis……………………………………………………………………58

Conclusion and Prayer…………………………...…………………………..63

Certificate of Service……………….....................................................64

Certificate of Word Count…………………………………………………64

## **PARTIES TO THE CASE**

APPELLANT:          QUINTON JONES

Attorney for Appellant at Trial:

        Name:       Lawrence Packard
        SBN:        15402500
        Address:    P.O. Box
                    Lake Jackson, Texas 77566


Attorney for Appellant on Appeal:

        Name:       Joseph Kyle Verret
        SBN:        24042932
        Address:    The Law Office of Kyle Verret, PLLC
                    1200 Broadway, Suite 2743
                    Pearland, Texas 77584
        Phone:      281-764-7071
        Fax:         281-764-7071
        Email:      kyle@verretlaw.com


APPELLEE:           THE STATE OF TEXAS

Attorneys for the State at Trial:

        Name:       David Tamez
        SBN:        24079433
        Name:       Jessica Pulcher
        SBN:        00795600
        Address:    Brazoria County Criminal District Attorney
                    111 East Locus Street, Suite 408A
                    Angleton, Texas 77515


Attorneys for the State on Appeal:

        Name:       Jeri Yenne
        SBN:        04240950
        Name:       David Bosserman
        SBN:        02679520
        Address:    Brazoria County Criminal District Attorney
                    111 East Locust Street, Suite 408A
                    Angleton, Texas 77515
        Phone:      979-864-1230
        Fax:         979-864-1525

# LIST OF AUTHORITIES

## Constitutional Provisions

U.S. CONST. AMEND. IV………..……..24, 25, 38, 40, 43, 44, 46, 47, 49, 50, 63

TEX. CONST. ART. I, § 9……………..…………………………..…….24, 40

## Rules

TEX. R. APP. PROC. 44.2(A)……………………………………………...38, 50

TEX. R. APP. PROC. 44.2(B). …………………………………….................38, 50

## Statutes

Tex. Code Crim. Proc. Ann. 38.23 (Lexis Advance current through 2013 3d CS)…………………………………………………...25, 37, 38, 41, 49, 50

Tex. Health & Safety Code §481.115 (Lexis Advance current through 2013 3d CS)…………………………………………………………...53, 56

Tex. Transp. Code § 545.058 (Lexis Advance current through 2013 3d CS)………………………………………………………….26, 29-33

Tex. Transp. Code § 545.060 (Lexis Advance current through 2013 3d CS)………………………………………………………….26, 28-30

## Appellate Court Decisions

*Bass v. State*, 64 S.W.3d 646  (Tex. App. -- Texarkana 2001, pet. ref'd.)…….52, 54

*Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000)……………….24

*Curtis v. State*, 238 S.W.3d 376 (Tex. Crim. App. 2007)……………………………36

*Delafuente v. State*, 414 S.W.3d 173 (Tex. Crim. App. 2013)……………………25

*Foster v. State*, 326 S.W.3d 609 (Tex. Crim. App. 2010)…………………………36

*King v. State,* 953 S.W.2d 266 (Tex. Crim. App. 1997)………………………38, 50

*Lothrop v. State*, 372 S.W.3d 187 (Tex. Crim. App. 2012)……………………31-32

*Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (U.S. 1961)...…………………………………………………….25, 37, 41, 49

*Overshown v. State*, 329 S.W.3d 201 (Tex. App. -- Houston [14th Dist.] 2010, no pet.)……………………………………………………………25

*Pineda v. State*, 444 S.W.3d 136 (Tex. App. -- San Antonio 2014, pet. ref'd)……47

*Poindexter v. State*, 153 S.W.3d 402 (Tex. Crim. App. 2005)………………...59, 61

*Pomier v. State*, 326 S.W.3d 373 (Tex. App. -- Houston [14th] 2010, no pet.)……………………………………………………………52, 56, 61

*Rodriguez v. United States*, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (U.S. 2015)...41, 46

*Scardino v. State*, 294 S.W.3d 401 (Tex. App. -- Corpus Christi 2009, no pet.)…………………………………………………..…..29, 30, 33

*Seals v. State*, 187 S.W.3d 417 (Tex. Crim. App. 2005)…………..…………..54, 56

*State v. Houghton*, 384 S.W.3d 441 (Tex. App. -- Fort Worth 2012, no pet.)……..28

*State v. Kerwick*, 393 S.W.3d 270 (Tex. Crim. App. 2013)………………………24

*State v. Robinson*, 334 S.W.3d 776 (Tex. Crim. App. 2011)…………………..25, 40

*Torres v. State*, 466 S.W.3d 329 (Tex. App. -- Houston [14th Dist.] 2015, no pet.)………………………………………………………………………………...59

*United States v. Benavides*, 291 Fed. Appx. 603 (5th Cir. Tex. 2008)…………….31

*United States v. Chavez-Villarreal*, 3 F.3d 124 (5th Cir. Tex. 1993)…………..47-48

*United States v. Lopez-Moreno*, 420 F.3d 420 (5th Cir. 2005)……25, 40, 43, 45, 46

*United States v. Powell*, 732 F.3d 361 (5th Cir. 2013)………………………......41, 45

*Young v. State*, 133 S.W.3d 839 (Tex. App. -- El Paso 2004, no pet.)……...…….35

## STATEMENT OF THE CASE

On September 18, 2014, Appellant was indicted for the offense of possession of a controlled substance, penalty group one, one to four grams of methamphetamine, alleged to have occurred on or about June 28, 2014. (1 C.R. at 5). The State filed notice of enhancement on February 25, 2015. (1 C.R. at 17). Appellant filed a motion to suppress on March 3, 2015. (1 C.R. at 14-15). The trial court held a suppression hearing on March 26, 2015. (2 R.R. at 1). The trial court denied Appellant's motion to suppress. (2 R.R. at 40).

Appellant waived his right to a jury trial in writing. (1 C.R. at 24). The court held a trial on March 26, 2015. (3 R.R. at 1). Appellant was convicted of the charged offense. (C.R. at 47). A presentence investigation was conducted. (2 C.R.). The trial court held a punishment hearing on June 26, 2015. (4 R.R. at 1). The sentenced Appellant to nine years confinement in the Texas Department of Criminal Justice Institutional Division. (C.R. at 47).

Appellant timely filed notice of appeal on July 10, 2015. (1 C.R. at 46). Appellant filed a motion for new trial on July 10, 2015. (1 C.R. at 43). Appellant's motion for new trial was overruled by operation of law.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. The Court's decisional process would be aided by oral argument.

# ISSUES PRESENTED

**Appellant's First Point of Error:** The trial court erred by denying Appellant's motion to suppress. The officer who conducted the traffic stop of the vehicle operated by Appellant lacked reasonable suspicion of any traffic violation or other criminal activity.

**Appellant's Second Point of Error:** The trial court erred by denying Appellant's motion to suppress. The detention of Appellant was unreasonably prolonged past the time reasonably necessary to satisfy the purpose of the traffic stop. The continued detention of Appellant after warrant checks were complete, and alternatively, once the passenger with warrants in the vehicle was arrested, was an unreasonable seizure.

**Appellant's Third Point of Error:** If this Court finds that the trial court erred by denying Appellant's motion to suppress, this Court should find that the evidence remaining, after excluding the suppressible evidence, is legally insufficient to sustain the conviction against Appellant for possession of a controlled substance.

**Appellant's Fourth Point of Error:** The trial court was not rationally justified in finding beyond a reasonable doubt that Appellant possessed a controlled substance as alleged in the indictment. Deferring to the trial court's rational resolution of conflicting evidence, the evidence admitted at trial did not support a conclusion that Appellant committed possession of a controlled substance.

# SUMMARY OF THE ARGUMENT

The trial court erred by overruling the Appellant's motion to suppress. The stop of Appellant's vehicle was made without reasonable suspicion of criminal activity and without probable cause that a crime had been committed.

The continued detention of Appellant on the roadside after a reasonable time had passed to satisfy the initial purpose of the stop and complete the warrant checks of the occupants of Appellant's vehicle was an unreasonable detention. Furthermore, the testimony adduced at the suppression hearing did not demonstrate the reasonableness of the officer's decision to continue to detain Appellant while waiting for another officer to arrive to arrest a passenger with an outstanding warrant.

Alternatively, the continued detention of Appellant after the purpose of the stop was dispelled and the passenger with a warrant was arrested was unlawful. The officer had completed a warrant check of the occupants, determined Appellant was not impaired, and arrested the passenger with a warrant. The record contains no articulable fact that created additional individualized suspicion justifying the continued detention of Appellant. There was no reason for the officer to detain Appellant another second on the roadside.

Appellant's consent to search the vehicle was not a product of free will, but a result of the continued unlawful detention of Appellant on the roadside for over thirty minutes.

The evidence of a controlled substance found in Appellant's vehicle was obtained as a result of an unlawful seizure in violation of the Fourth Amendment to the United States Constitution. Without the evidence obtained as a result of the unlawful seizure, the evidence supporting a conviction in this cause is legally insufficient.

If this Court finds that at no point the Fourth Amendment was violated, this Court should find that the evidence admitted at trial was legally insufficient to support Appellant's conviction for possession of a controlled substance. Appellant was one of four occupants in the vehicle. The controlled substance was only found after Appellant was standing on the roadside for over twenty minutes, while the other occupants were still in the vehicle. Furthermore, the uncontroverted testimony at trial was that an occupant other than Appellant put the controlled substances where the arresting officer found them.

## Motion to Suppress Hearing

The attorney for the State stipulated that the search and arrest of Appellant were warrantless. (2 R.R. at 11-12).

Testimony of Mike Glaspie

Appellant's counsel called Mike Glaspie (hereinafter "Glaspie"), a police officer employed by the City of West Columbia. (2 R.R. at 8-9). He had worked for West Columbia Police Department for six years and was a patrol supervisor. (2 R.R. at 13).

Glaspie testified that in June 2014, he stopped Appellant and arrested him for the offense of possession of methamphetamine. (2 R.R. at 9). He testified that the search was warrantless. (2 R.R. at 10).

Glaspie first observed Appellant's vehicle at approximately 2:25 a.m. (2 R.R. at 12). Glaspie testified that, in his experience, he is more likely to encounter intoxicated drivers after midnight. (2 R.R. at 14).

The stop occurred within a mile of the city limits of West Columbia. (2 R.R. at 10). Glaspie first saw Appellant's vehicle leaving a house that he described as a "narcotic house." (2 R.R. at 15). Glaspie testified that he observed Appellant swerve in his lane of traffic. (2 R.R. at 15). He testified that he then observed Appellant "violate traffic law, which was cross a double white line or white line

13

onto the shoulder of the road, fail to maintain a single lane." (2 R.R. at 15, 20). Glaspie only observed the passenger side tires of the vehicle cross the line once. (2 R.R. at 23). The vehicle never crossed the center stripe into oncoming traffic. (2 R.R. at 24). Based on these observations, Glaspie stopped Appellant's vehicle. (2 R.R. at 15). Glaspie testified that he was concerned that Appellant was either intoxicated or had a "medical issue." (2 R.R. at 16).

Glaspie testified that after he stopped the vehicle he began a DWI investigation. (2 R.R. at 16). He described Appellant as "agitated," "fidgety," and "irritated". (2 R.R. at 16). Glaspie testified that he believed Appellant to either be impaired or trying to hide something. (2 R.R. at 22). He testified that Appellant could not produce his driver's license or his insurance card. (2 R.R. at 16). Glaspie asked for the names of the occupants of the vehicle and performed a warrant check on them. (2 R.R. at 16).

Glaspie then backed up his vehicle to allow for room for the administration of field sobriety tests. (2 R.R. at 16). He then asked Appellant to step of out the car. (2 R.R. at 16). He administered the Horizontal Gaze Nystagmus (hereinafter "HGN") test to Appellant, but performed no other field sobriety tests. (2 R.R. at 26). After conducting the HGN test, Glaspie determined that Appellant was not impaired. (2 R.R. at 28). Glaspie did not believe Appellant's speech was slurred.

14

(2 R.R. at 27). Glaspie did not charge Appellant with Driving While Intoxicated. (2 R.R. at 26).

Glaspie testified that the warrant check returned that one of the backseat passengers had an outstanding parole warrant. (2 R.R. at 16-17). Glaspie requested assistance from the Brazoria County Sheriff's Office (hereinafter "BCSO"), and a deputy was dispatched to assist him. (2 R.R. at 17).

Glaspie asked for consent to search the vehicle. (2 R.R. at 17). The request to search the vehicle was not made until approximately 40 minutes into the stop. (2 R.R. at 24-26). He testified that he was given consent to search. (2 R.R. at 17).

State's Exhibit 1

The traffic stop and encounter between Glaspie and the occupants of Appellant's vehicle was recorded. (2 R.R. at 9). The camera system in Glaspie's vehicle stored video starting 30 seconds prior to the activation of its emergency lights. (2 R.R. at 10). The recording was admitted into evidence at the suppression hearing as State's Exhibit 1. (2 R.R. at 19). This Court may review the video, which is part of the record in this cause. The following is a timeline of State's Exhibit 1. The time references in this timeline, and throughout Appellant's brief, are approximate time markers, as there is no time marker imbedded in the video.

00:00      Video start time

| 00:25 | Appellant's car crossed the right hand solid line. Glaspie immediately activated red and blue overhead lights |
|---|---|
| 02:09 | Glaspie approached Appellant's car and requested his driver's license and proof of insurance. |
| 02:26 | Glaspie requested identification from the backseat passengers. |
| 03:39 | Glaspie requested identification from another passenger. |
| 05:30 | Glaspie requested a warrant check on three people. |
| 15:00 | Dispatch can be heard on the radio. Glaspie responded "Nothing else on the other ones yet?" |
| 16:28 | Glaspie asked Appellant to step out of car; Appellant complied. |
| 16:55 | Glaspie interrogated Appellant on the side of the road. |
| 17:36 | Glaspie frisked Appellant. |
| 18:40 | Glaspie administered HGN test to Appellant. |
| 20:10 | Glaspie advised Appellant that he only sees "a little bit" and this could be caused by fatigue. |
| 20:50 | Glaspie asked Appellant the name of the front seat passenger, Appellant replied "Margaret Nichols". |
| 21:25 | Glaspie confirmed the front seat passenger was Margaret Nichols. |
| 22:13 | Glaspie requested a warrant check on Nichols. |

| | |
|---|---|
| 24:45 | Dispatch stated "Garcia is 99 out of Austin and county." Glaspie asked about the type of warrants. Dispatch advised, "Assault with Deadly Weapon, used a .38 caliber revolver, Aggravated Assault and parole violation." |
| 25:15 | Glaspie requested a "county unit". |
| 25:50 | Glaspie requested "confirmation on those hits." Dispatch replied, "they are good warrants." |
| 31:35 | Glaspie requested an "ETA" for BCSO. Dispatch advised that there was no ETA and she would check on others. |
| 32:00 | Dispatch advised that a BCSO unit was en route. |
| 32:15 | Glaspie stated that the subject was either high or intoxicated. |
| 33:14 | The BCSO deputy arrived. Glaspie and the deputy approached the vehicle. |
| 34:00 | The officers arrested one of the backseat passengers and advised him that he has a warrant. |
| 36:16 | Glaspie told Appellant that the arrested passenger is going back to prison. |
| 36:25 | Glaspie asked the other passengers if there is anything else in the car. The passengers reply no. |

39:36    Glaspie asked Appellant if there is anything that he shouldn't have in his car. Appellant replied "I hope not."

39:45    Glaspie asked for consent to search the vehicle and Appellant consented.

39:55    Glaspie told the other officer, "The front seat passenger, Brazoria is real familiar with her, they said she's either going to have dope or pills on her."

40:30    Glaspie requested the passengers to step out of the vehicle and began to search the vehicle.

45:20    Glaspie arrested Appellant and Nichols for methamphetamine.

18

**Testimony at Guilt / Innocence Phase of Trial**

The parties agreed that the evidence from the motion to suppress hearing be carried over into evidence at guilt / innocence. (3 R.R. at 5).

Testimony of Mike Glaspie

Glaspie testified that on June 28, 2014, he stopped Appellant's vehicle north of West Columbia, Texas on Highway 35. (3 R.R. at 6).

Glaspie testified that Appellant was agitated and irritated. (3 R.R. at 6). He testified that Appellant was fidgeting in his car as he went through his insurance and registration paperwork. (3 R.R. at 6-7). Shortly after he stopped Appellant's vehicle, Glaspie ran Appellant's driver's license. (3 R.R. at 7). He also requested a warrant check on the other occupants of the vehicle. (3 R.R. at 7). Glaspie identified the other occupants of the vehicle: passenger side front seat passenger Margaret Nichols (hereinafter "Nichols"), driver side rear passenger Jimmy Garcia (hereinafter "Garcia"), and passenger side rear seat passenger Tahika Johnican (hereinafter "Johnican"). (3 R.R. at 19-20). He then moved his patrol vehicle to start a DWI investigation. (3 R.R. at 7).

Appellant told Glaspie that he had driven to Abilene and back earlier that day. (3 R.R. at 32).

Another officer arrived on the scene, arrested Garcia, the passenger with an outstanding warrant, and placed him in Glaspie's patrol car. (3 R.R. at 7). After

arresting the passenger, Glaspie asked for consent to search the vehicle. (3 R.R. at 7). The other passengers were removed from the vehicle and the officers searched the vehicle. (3 R.R. at 7).

Glaspie began the search on the front passenger side, where he observed an open purse. (3 R.R. at 8). He searched the purse without obtaining additional consent. (3 R.R. at 21). In the front passenger side of the vehicle he also found a Crown Royal makeup bag that contained a pipe. (3 R.R. at 8). He testified that it was a type of pipe commonly used to smoke methamphetamine, crack cocaine, or marijuana. (3 R.R. at 8). He found another Crown Royal bag in the passenger side floorboard containing another pipe. (3 R.R. at 8). He found a prescription pill bottle containing pills. (3 R.R. at 9). He opened the center console and found three bags containing a crystalized substance, which he suspected to be methamphetamine. (3 R.R. at 9-10). He also found four bags containing rolling papers. (3 R.R. at 9). After finding the crystalized substance, Glaspie arrested Appellant and the front seat passenger, then continued the search. (3 R.R. at 10). Glaspie then found a small bag of a synthetic cannabinoid. (3 R.R at 10).

Glaspie placed the pipes and substances he found in plastic evidence bags and labeled them with an offense report number. (3 R.R. at 11-12). The bags were submitted to the Brazoria County Sheriff's Office for testing. (3 R.R. at 12).

Glaspie retrieved the evidence from the sheriff's office and brought it to court for trial. (3 R.R. at 13).

Testimony of Haleigh Balser

The State called Haleigh Balser (hereinafter "Balser"), a chemist in the controlled substance section of the Brazoria County Sheriff's Office Crime Lab. (3 R.R. at 33-34).

Balser testified that she tested the substance collected in this cause. (3 R.R. at 35-36). Balser first weighed the substance. (3 R.R. at 36). She then performed presumptive tests on the substance. (3 R.R. at 36). Balser then tested the substance using a gas chromatography mass spectrometer. (3 R.R. at 36). She confirmed that the substance was methamphetamine. (3 R.R. at 36). She testified that the total amount of the substance tested was approximately 1.5556 grams. (3 R.R. at 37). Her report was admitted as State's Exhibit 3. (3 R.R. at 37).

Testimony of Tahika Johnican

Appellant's trial counsel called Johnican. (3 R.R. at 44). She testified that she had known Appellant for years. (3 R.R. at 45). She was with him, Nichols, and Garcia, on June 28, 2014. (3 R.R. at 45). She had been with Appellant for a couple of hours. (3 R.R. at 46).

Johnican testified that Appellant had rented the vehicle. (3 R.R. at 45). Johnican was seated behind Nichols. She testified that she could see what Nichols was doing. (3 R.R. at 46).

Johnican testified that she was not aware of Appellant having drugs on him and did not see him use drugs on the night of his arrest. (3 R.R. at 46-47). Johnican testified that Nichols had drugs in her purse. (3 R.R. at 47). Appellant was outside the car for twenty to thirty minutes after the stop. (3 R.R. at 47). She testified that she witnessed Nichols reach across the driver's seat and feel in the pocket in the door. (3 R.R. at 50). Nichols said that she had two sacks, then she opened the console and closed it. (3 R.R. at 50). Nichols told Johnican that she had methamphetamine. (3 R.R. at 52). After Garcia was removed from the vehicle, Nichols reached in the backseat, got Garcia's cigarette pack, put something in it, and threw the pack in the back of the car. (3 R.R. at 50).

Johnican testified that Appellant did not look in the console on the night of the arrest. (3 R.R. at 52). She testified that she did not believe that Appellant ever possessed methamphetamine on the night of the arrest. (3 R.R. at 52-53).

Johnican also testified that earlier that night Nichols received a phone call. (3 R.R. at 55). In response to that call, Johnican, Nicholas, Garcia, and Appellant went to a house in West Columbia. (3 R.R. at 56). Johnican testified that after they all left the house in West Columbia that Appellant was upset at Nichols. (3

22

R.R. at 56). Johnican testified that Appellant was upset because Nichols told him that she was going to West Columbia to pick up money, and that she did not get the money. (3 RR. at 59). Johnican testified that she and Appellant knew that Nichols had sold methamphetamine in the past. (3 R.R. at 61-62).

**Testimony at Punishment Phase of Trial**

Testimony of Carrie Bullard

Appellant called Carrie Bullard, his mother, at the punishment phase of trial. (4 R.R. at 9-10). She testified that Appellant would be a good candidate for probation. (4 R.R. at 10). She testified that he is a great father. (4 R.R. at 10). She testified that Appellant is responsible and family oriented. She called him her rock. (4 R.R. at 10). She testified that he is a hard worker. (4 R.R. at 11-12).

She testified that he was on parole. (4 R.R. at 16). She testified that in the past when he was on probation that his probation had been revoked for probation violations. (4 R.R. at 17-18).

## APPELLANT'S FIRST POINT OF ERROR

*The trial court erred by denying Appellant's motion to suppress. The officer who conducted a traffic stop of the vehicle operated by Appellant lacked reasonable suspicion of any traffic violation or other criminal activity.*

## Standard of Review and Applicable Law

A reviewing court should apply a bifurcated standard of review to a trial court's ruling on a motion to suppress. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). The reviewing court should give "almost total deference to a trial court's determination of historical facts and [review] de novo the court's application of the law of search and seizure." *Carmouche v. State*, 10 S.W.3d at 327. "When mixed questions of law and fact do not depend on the evaluation of credibility and demeanor," a reviewing court should review the trial judge's decision de novo. *Kerwick*, 393 S.W.3d at 273.

The Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution provide that people are to be secure in their persons and effects from unreasonable searches and seizures by the government. U.S. CONST. AMEND. IV; TEX. CONST. ART. I, § 9.

A defendant who alleges a violation of the Fourth Amendment has the burden of producing evidence that rebuts the presumption of proper police

conduct. *State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011). This burden may be met by establishing that the stop, arrest, or search was warrantless. *Id*. at 779. Once the presumption of proper police conduct is rebutted, the burden shifts to the State to prove the reasonableness of the search or seizure. *Id*. at 779.

Evidence obtained in violation of the law must be suppressed per the Texas statutory exclusionary rule and the U.S. Constitutional exclusionary rule. Tex. Code Crim. Proc. Ann. 38.23 (Lexis Advance current through 2013 3d CS); See *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (U.S. 1961).

A traffic stop is a seizure for Fourth Amendment purposes. *Overshown v. State*, 329 S.W.3d 201, 205 (Tex. App. -- Houston [14th Dist.] 2010, no pet.). For a traffic stop to be justified at its inception, "an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005); *Delafuente v. State*, 414 S.W.3d 173, 176-177 (Tex. Crim. App. 2013). Reasonable suspicion means that an "officer has specific, articulable facts that, taken together with reasonable inferences from those facts, would lead the officer to reasonably conclude that the person detained is, has been, or soon will be, engaging in criminal activity." *Delafuente*, 414 S.W.3d. at 177.

The Texas Transportation Code provides that it is an offense for an operator

25

of a motor vehicle to fail to maintain a single marked lane:

> An operator on a roadway divided into two or more clearly marked lanes for traffic: **(1)** shall drive as nearly as practical entirely within a single lane; and **(2)** may not move from the lane unless that movement can be made safely.
>
> Tex. Transp. Code § 545.060(a) (Lexis Advance current through 2013 3d CS).

The Transportation Code also prohibits driving on an improved shoulder except in certain circumstances:

> An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
> **(1)** to stop, stand, or park;
> **(2)** to accelerate before entering the main traveled lane of traffic;
> **(3)** to decelerate before making a right turn;
> **(4)** to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
> **(5)** to allow another vehicle traveling faster to pass;
> **(6)** as permitted or required by an official traffic-control device; or
> **(7)** to avoid a collision.
>
> Tex. Transp. Code § 545.058(a) (Lexis Advance current through 2013 3d CS);

## Relevant Facts

Glaspie first saw Appellant's vehicle at 2:25 a.m. He testified that he is more likely to encounter intoxicated drivers after midnight. (2 R.R. at 14). Glaspie testified that he saw Appellant's vehicle leave what Glaspie described as a "narcotic

house." (2 R.R. at 15). Glaspie testified that methamphetamine was sold from the house. (2 R.R. at 15).

Glaspie testified that the Appellant's vehicle swerved in its lane of traffic. (2 R.R. at 15). He testified that he observed the vehicle "violate traffic law, which was cross a double white line or white line onto the shoulder of the road, fail to maintain a single lane." (2 R.R. at 15). Glaspie only observed the vehicle cross the line once. (2 R.R. at 23). Only the passenger side tires of the vehicle crossed the fog line: no more than six inches of the vehicle crossed the line. (2 R.R. at 24). The vehicle never crossed the center stripe into oncoming traffic. (2 R.R. at 24).

## Analysis

The trial court erred by denying Appellant's motion to suppress. Glaspie lacked reasonable suspicion or probable cause to stop Appellant's vehicle and the stop was made without a warrant.

Glaspie cited three bases for stopping Appellant's vehicle: 1) failure to maintain a single lane (2 R.R. at 15), 2) crossing onto the shoulder (2 R.R. at 15, 20), and 3) a concern that Appellant was intoxicated or had a medical issue (2 R.R. at 16).

### The Stop Was Warrantless

The State stipulated to the warrantless arrest and search. (2 R.R. at 11-12). The trial court found that the burden was then shifted to the State. (2 R.R. at 12).

27

<u>Glaspie Lacked Reasonable Suspicion or Probable Cause of A Traffic Violation for Failure to Maintain a Single Lane</u>

One basis that Glaspie cited for stopping Appellant's vehicle was "failure to maintain a single lane." (2 R.R. at 15). Glaspie lacked reasonable suspicion or probable cause of a traffic violation for failure to maintain a single lane.

The Texas Transportation Code makes it an offense for a person to fail to "drive as nearly as practical entirely within a single lane." Tex. Transp. Code § 545.060(a). It is also an offense to move from a lane, "unless that movement can be made safely." *Id*. Without evidence that a lane change is unsafe, a court should not find that there was a violation of Tex. Transp. Code § 545.060(a). *State v. Houghton*, 384 S.W.3d 441, 448 (Tex. App. -- Fort Worth 2012, no pet.).

Glaspie testified that the vehicle never crossed the center stripe. (2 R.R. at 24). Glaspie stopped the vehicle after it crossed the right solid line only once. (2 R.R. at 23). The entire vehicle did not cross the line, only a part of it. (2 R.R. at 23; State's Exhibit 1 at 00:25). There was no testimony that the driving was unsafe.

Glaspie's stop of Appellant's vehicle for "failure to maintain a single lane" was unreasonable as it was not grounded in reasonable suspicion or probable cause of a violation of Texas Transportation Code § 545.060(a).

28

<u>Glaspie Lacked Reasonable Suspicion or Probable Cause of A Traffic Violation for Driving on an Improved Shoulder</u>

Glaspie testified that he stopped Appellant for "crossing the white line onto the shoulder of the road." (2 R.R. at 15). Glaspie lacked reasonable suspicion or probable cause of a traffic violation for driving on an improved shoulder.

A person may drive a vehicle on an "improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only" under certain circumstances. Tex. Transp. Code § 545.058(a). Among those lawful reasons for a person to drive on an improved shoulder are "to stop, stand, or park," "to decelerate before making a right turn," and "to allow another vehicle traveling faster to pass." Tex. Transp. Code § 545.058(a)(1),(3), and (5).

The Corpus Christi Court of Appeals found that one instance of crossing the fog line did not amount to driving on the shoulder in violation of §545.058(a). *Scardino v. State*, 294 S.W.3d 401, 406 (Tex. App. -- Corpus Christi 2009, no pet.). In *Scardino*, the arresting officer cited Tex. Transportation Code § 545.060(a)(failure to maintain lane) as the basis of his stop. *Id*. at 404. The State argued that there was also a violation of § 545.058(a). *Id*. at 406. At the suppression hearing, the arresting officer testified "the driver crossed the fog line, he steered back to get back in his lane." *Id*. at 403. On cross-examination, the

officer agreed that all of the driving facts occurred within Scardino's lane, "with the exception of crossing over the fog line one time". *Id*. at 404. The court found that officer's description of the defendant's driving did not amount to a violation of §545.060(a). *Id*. at 406.

The driving facts in Appellant's case regarding the crossing of the fog line are almost identical to those in *Scardino*. Glaspie testified that Appellant only crossed the solid line once and that this was the basis of the traffic stop. (2 R.R. at 15, 23-24). A review of the video of the stop shows that immediately upon a part of Appellant's vehicle (approximately half) crossing the right hand solid white line, Glaspie activated his signals for Appellant to stop. (State's Exhibit 1 at 00:25). Appellant's vehicle quickly returned to the lane of traffic, and then pulled over. (State's Exhibit 1 00:25 – 00:35). The officer in *Scardino* testified that the defendant's vehicle only crossed the fog line once, and then returned to his lane of traffic. *Scardino*, 294 S.W.3d at 403-404. The court in *Scardino* found that a vehicle crossing the solid line once and returning to a lane of traffic did not amount to driving on the shoulder. Similar to the defendant in *Scardino*, Appellant did not drive his vehicle on the shoulder. Appellant's vehicle crossed the solid line once, returned to his lane, then pulled completely on to the shoulder as Glaspie had activated his overhead lights.

Appellant recognizes that other courts of appeals have applied § 545.058

30

differently. *State v. Dietiker*, 345 S.W.3d 426 (Tex. App. Waco 2011, no pet.); *Maldonado v. State*, No. 04-12-00228-CR (Tex. App. -- San Antonio May 15, 2013, pet. ref'd)(memo. op., not designated for publication).

In an unpublished opinion, the Fifth Circuit Court of Appeals found that as "Texas law explicitly permits a vehicle operate to drive on an improved shoulder for a variety of purposes so long as 'the operation is necessary and may be done safely'," that "driving on an improved shoulder, without more" is not a valid basis for a traffic stop. *United States v. Benavides*, 291 Fed. Appx. 603, 607 (5th Cir. Tex. 2008).

The Court of Criminal Appeals held that the "the offense of illegally driving on an improved shoulder can be proved in one of two ways: either driving on the improved shoulder was not a necessary part of achieving one of the seven approved purposes, or driving on the improved shoulder could not have been done safely." *Lothrop v. State*, 372 S.W.3d 187, 191 (Tex. Crim. App. 2012). In Texas Transportation Code § 545.058, "the legislature *explicitly* made certain behavior legal. It would violate legislative intent to allow that behavior to serve as the basis of a traffic stop or arrest." *Id*. The intermediate court had found that "driving on an improved shoulder, regardless of circumstance, is prima facie evidence of an offense" and that the statute established defenses that may be raised at trial. *Id*. at 189. The Court of Criminal Appeals disagreed and held that §545.058 does not

create a "shifting-burden, self-defense-style framework" requiring a defendant to prove that he was complying with the law. *Id*. at 192.

A review of the video shows that Glaspie activated his overhead lights immediately upon Appellant crossing the line. (State's Exhibit 1 at 00:25). Appellant's vehicle crossed over the fog line immediately before an intersection on the highway. Appellant's vehicle may have been moving to the right to exit the highway. (State's Exhibit 1 at 00:25). Driving on the shoulder to decelerate before making a right hand turn is legal. Tex. Transp. Code § 545.058(a)(3). Appellant may also have been moving on to the shoulder to permit Glaspie's vehicle to pass his, which is also a legal use of the shoulder for driving. Tex. Transp. Code § 545.058(a)(5). Officer Glaspie observed Appellant drive in a way that is explicitly permitted by statute and initiated the stop of Appellant's vehicle before determining whether the driving was for a purpose allowed by the statute.

Glaspie's testimony never established that Appellant's movement over the white line was unsafe. Glaspie's testimony also never addressed his investigation of the possible reasons for Appellant's driving that would have been legal under §545.058(a)(1)-(7). *See Lothrop*, 372 S.W.3d at 191.

At the time that Glaspie activated his overhead lights and initiated a traffic stop of Appellant, he did not have reasonable suspicion or probable cause that Appellant had violated Texas Transportation Code § 545.058(a). For seven reasons

listed in the statute, it is not against the law to drive on an improved shoulder. Glaspie did not determine if Appellant was doing something lawful or unlawful before activating his lights and initiating the traffic stop. Furthermore, as interpreted by at least one Texas court of appeals, Appellant did not drive on the shoulder. *Scardino v. State*, 294 S.W.3d at 406.

Glaspie's stop of Appellant for "crossing the white line onto the shoulder of the road" was unreasonable and not ground in reasonable suspicion or probable cause of a violation of Texas Transportation Code § 545.058(a).

Glaspie Lacked Reasonable Suspicion That Appellant Was Intoxicated

Glaspie testified that he believed Appellant to be intoxicated or having a "medical issue." (2 R.R. at 16). He testified that he stopped the vehicle to perform a DWI investigation. (2 R.R. at 16). The State argued in closing that swerving within a lane of traffic, after leaving a "drug house," at two o'clock in the morning were sufficient facts to cause Glaspie to suspect that Appellant was involved in criminal activity: "if he was not driving while intoxicated having left from a drug house, [he] was involved perhaps in some drug activity." (2 R.R. at 35).

Glaspie lacked reasonable suspicion that the driver of the vehicle was intoxicated. Glaspie's statement that he was familiar with the house as one where drugs were sold was not a "specific, articulable fact." The statement combined

33

with Appellant's driving and the time was not sufficient to warrant a stop of Appellant's vehicle.

An officer may stop a vehicle, without observing a traffic violation, when "the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The facts must be sufficiently articulated for the trial court and reviewing court to subject the detention to "detached, neutral scrutiny… [of] the reasonableness of a particular search or seizure in light of the particular circumstances." *Id*. at 493. In conducting a reasonable suspicion analysis, a court must consider the totality of the circumstances. *Id*. at 492-493.

Glaspie testified that he was familiar with 440 West Brazos Avenue, the house that he saw Appellant's vehicle leave. (2 R.R. at 15). He testified that the address was a "narcotic house." (2 R.R. at 15). Glaspie testified that "they sell methamphetamines from that house." (2 R.R. at 15).

Glaspie's assertion that 400 West Brazos was a narcotic house where methamphetamine was sold is a not an articulable fact that would allow a court to conduct a "detached, neutral scrutiny" of the officer's belief. *See Ford*, 158 S.W.3d at 493. Beyond his statement that "we have received information," Glaspie

34

did not provide the trial court with any fact to support his contention that 440 West Brazos was a place where drugs were sold. He does not state who received the information, where the information came from, or what the information was. There is no information about how long ago Glaspie, or other officers, may have received information relevant to narcotics sales at the house in relation to the stop of Appellant's vehicle. There is no way of knowing, based on Glaspie's statement, whether one person sold drugs from the house two years ago, or whether the police had ongoing active drug sales being monitored from the address. As such, Glaspie's statements are not supportive of reasonable suspicion. Furthermore, a vehicle making a brief stop at a house where there is a suspicion of narcotics activity does not suffice for reasonable suspicion to stop that vehicle. *Young v. State*, 133 S.W.3d 839 (Tex. App. -- El Paso 2004, no pet.).

Even if this Court finds that the trial court would not have erred by considering Glaspie's statement about 400 West Brazos being a place where methamphetamine is sold, there is not testimony that established or inferred that people consumed methamphetamine at that address.

Glaspie's statement that what he observed of Appellant's driving gave him reason to be concerned that Appellant was intoxicated was also a conclusory opinion, not supported by articulable fact.

In considering whether an officer had reasonable suspicion to stop a vehicle

35

for suspicion of intoxicated driving, absent a traffic violation, courts have looked to 1) the officer's experience; 2) the officer's specific training in detecting intoxicated drivers; 3) whether it was part of the officer's training that weaving or swerving was a possible indication of intoxication; 5) the amount of weaving compared to the distance driven, 6) other bad driving; 7) location of driving relative to places serving alcohol, and 8) time of day. *Curtis v. State*, 238 S.W.3d 376, 380 (Tex. Crim. App. 2007); *Foster v. State*, 326 S.W.3d 609, 612-614 (Tex. Crim. App. 2010). Appellant recognizes that this is not an exhaustive list of factors. Applying these considerations to Appellant's case, this Court should find that Glaspie failed to articulate facts that amounted to reasonable suspicion to stop Appellant for a driving while intoxicated.

Glaspie testified that intoxicated drivers are more likely to be encountered after midnight. (2 R.R. at 14). The stop was conducted at approximately two o'clock in the morning. (2 R.R. at 12). Glaspie described Appellant's driving as "swerving in his lane of traffic. He didn't cross the line. He was swerving." (2 R.R. at 15). Based on these factors, Glaspie testified that Appellant's driving gave him cause for concern that Appellant was intoxicated.

He did not testify about what experience or training qualified him to discern that Appellant might have been intoxicated. He did not testify about how far he followed Appellant, how long Appellant drove, or how long Appellant swerved

36

within his lane.  Glaspie had worked for West Columbia Police Department for six years.  (2 R.R. at 13).  He did not testify about any specific training he might have received regarding the detection of intoxicated drivers.

The hollow assertion that Appellant left a narcotic house, at two o'clock in the morning, combined with some swerving within his lane of traffic and one cross over a line on to an improved shoulder does not amount to reasonable suspicion of criminal conduct.

Glaspie gave the trial court conclusions and opinions without articulating specific facts to support his beliefs.  He did not testify to "specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity."  *Ford*, 158 S.W.3d at 492.  As such, Glaspie lacked reasonable suspicion that Appellant was engaged in unspecified criminal conduct, or specifically driving while intoxicated.

<u>Suppression</u>

All evidence obtained in violation of the Constitution is inadmissible.  *Mapp v. Ohio*, 367 U.S. 643, 655 (U.S. 1961).  Texas codified the exclusionary rule, prohibiting admission of all evidence obtained in violation of the Constitution, or the laws of the State of Texas, or the United States.  Tex. Code Crim. Proc. Ann. Art. 38.23.

The substances in the vehicle were found on account of a search of Appellant's vehicle. (2 R.R. at 9; State's Exhibit 1 at 45:00). The search would not have occurred but for the unlawful traffic stop of Appellant's vehicle. Under both the Fourth Amendment and Article 38.23, the evidence obtained in the search of Appellant's vehicle should be suppressed.

Harm

The error complained of in Appellant's first point of error is a violation of the Fourth Amendment of the United States Constitution. As it is constitutional error, it is subject to review under Texas Rule of Appellate Procedure 44.2(a), which requires reversal unless "the court determines beyond a reasonable doubt that the error did not contribute to conviction or punishment." TEX. R. APP. PROC. 44.2(A).

If this Court finds that the Fourth Amendment does not necessitate suppression, but that article 38.23 would require suppression, and if this Court applies a harm analysis per Texas Rule of Appellate Procedure 44.2(b), the result of the harm analysis is the same. TEX. R. APP. PROC. 44.2(B). A harm analysis under 44.2(b) is done by determining whether the error had a "substantial and injurious effect or influence in determining the… verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

In the present case, the admission into evidence of the controlled substances

that were found in the vehicle, on account of the unlawful seizure, resulted in Appellant's conviction. If the controlled substances found in the vehicle were excluded from evidence, there would be no evidence that Appellant possessed a controlled substance. The error was harmful and had a substantial and injurious effect or influence in determining the verdict.

The trial court erred by denying Appellant's motion to suppress. Glaspie lacked reasonable suspicion or probable cause that Appellant had committed a traffic violation. He lacked reasonable suspicion that Appellant was intoxicated, or was otherwise engaged in criminal activity. Glaspie found the substance which forms the basis of the conviction in this cause only because of the illegal stop of Appellant. Had the stop not occurred, Glaspie would not have discovered the controlled substances in the vehicle Appellant was driving.

Appellant prays that this Court find that all evidence found as a result of the traffic stop be suppressed and reverse the decision of the trial court on Appellant's motion to suppress. Appellant prays that this Court reverse the judgment of the trial court.

## APPELLANT'S SECOND POINT OF ERROR

*The trial court erred by denying Appellant's motion to suppress. The detention of Appellant was unreasonably prolonged past the time reasonably necessary to satisfy the purpose of the traffic stop. The continued detention of Appellant after warrant checks were complete, and alternatively, once the passenger with warrants in the vehicle was arrested, was an unreasonable seizure.*

## Standard of Review and Applicable Law

The Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution provide that people are to be secure in their persons and effects from unreasonable searches and seizures by the government. U.S. CONST. AMEND. IV; TEX. CONST. ART. I, § 9.

A defendant who alleges a violation of the Fourth Amendment has the burden of producing evidence that rebuts the presumption of proper police conduct. *Robinson*, 334 S.W.3d at 778-779. This burden may be met by establishing that the stop, arrest, or search was warrantless. *Id*. at 779. Once the presumption of proper police conduct is rebutted, the burden shifts to the State to prove the reasonableness of the search or seizure. *Id*. at 779.

If a traffic stop is justified at its inception, "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Lopez-Moreno*, 420 F.3d at 430. During a traffic stop, an officer may "examine driver's

40

license and registration," "run a computer check [on the vehicle's occupants] to investigate whether the driver has any outstanding warrants and if the vehicle is stolen," and "ask the driver about the purpose and itinerary of his trip." *Id.* at 431. The purpose of these inquires should be to ensure "that vehicles on the road are operated safely and responsibly." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615, 191 L. Ed. 2d 492, 499 (U.S. 2015). The traffic stop must end "once an officer's initial suspicions have been verified or dispelled… unless there is additional reasonable suspicion supported by articulable facts." *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. Tex. 2013).

Evidence obtained in violation of the law must be suppressed per the Texas statutory exclusionary rule and the U.S. Constitutional exclusionary rule. Tex. Code Crim. Proc. Ann. 38.23; See *Mapp v. Ohio*, 367 U.S. 643.

## Relevant Facts

Glaspie testified that Appellant, the driver of the vehicle, was agitated, fidgety, and irritated. (2 R.R. at 16). Glaspie believed Appellant to either be intoxicated or trying to hide something. (2 R.R. at 22). Glaspie had a warrant check conducted for all of the vehicle's occupants. (2 R.R. at 16).

Glaspie testified that he backed up his patrol car for the administration of the standardized field sobriety tests. (2 R.R. at 26). He had Appellant step out of his car and administered the HGN test on Appellant. (2 R.R. at 16, 26). After

41

administering the HGN test, Glaspie concluded that Appellant was not intoxicated. (2 R.R. at 28).

The warrant check returned that one of the passengers had an outstanding parole warrant. (2 R.R. at 17). Glaspie received this information approximately 24 minutes after the stop began. (State's Exhibit 1 at 24:45). Upon learning that a passenger had an outstanding warrant, he did not arrest the passenger; instead, he requested a BCSO unit be dispatched to his location. (2 R.R. at 17; State's Exhibit 1 at 25:15). He testified that he "had to get a deputy to back [him] up to get the first person out of the vehicle." (2 R.R. at 25). He testified that he requested back up "because the warrant was for -- I believe it was assault and battery or something to that effect with a firearm." (2 R.R. at 17).

The other officer arrived at the scene approximately 33 minutes after the inception of the stop. (2 R.R. at 25-26; State's Exhibit 1 at 33:14). After the passenger was arrested, Glaspie asked for consent to search the vehicle. (2 R.R. at 17-18; State's Exhibit 1 at 39:45).

## Analysis

The trial court erred by denying Appellant's motion to suppress on the ground that the detention of Appellant was unlawfully and unreasonably delayed. At argument on the motion to suppress, Appellant's counsel moved for the suppression of all evidence obtained after the administration of the HGN test, when

Glaspie determined that Appellant was not impaired, on the basis that any further detention was unlawful.. (2 R.R. at 33).

If this court finds that the traffic stop was justified at its inception, then this Court should determine whether "the detention last[ed] no longer than [was] necessary to effectuate the purpose of the stop." *Lopez-Moreno*, 420 F.3d at 430. Appellant concedes that case law establishes that an officer may wait a reasonable amount of time for computer checks of warrants to be completed, even if that time was longer than reasonably necessary to administer the HGN test. *Lopez-Moreno*, 420 F.3d at 431. Once the warrant check was complete, it revealed that one of the passengers had a warrant. (2 R.R. at 17-18, 27; State's Exhibit 1 at 24:45). Appellant contends that once Glaspie determined that Appellant was not driving impaired and did not himself have a warrant, the purpose of the stop had been dispelled. The detention of Appellant after the HGN test was administered and the warrant check was complete was unreasonable and violative of the Fourth Amendment.

Glaspie stopped Appellant for two traffic offenses and a suspicion of driving while intoxicated. (2 R.R. at 15-16). About five minutes into the stop Glaspie requested a warrant check on three of the occupants of the vehicle. (State's Exhibit 1 at 5:30). He requested a warrant check on Nichols approximately twenty-two minutes into the stop. (State's Exhibit 1 at 22:13). Glaspie conducted the HGN

43

test on Appellant, and determined that he was not impaired. (2 R.R. at 28). The HGN test was administered and completed twenty minutes into the traffic stop. (State's Exhibit 1 at 18:40 to 20:10). Approximately twenty-five minutes into the stop, the warrant checks returned indicating that one passenger had a warrant. (2 R.R. at 17; State's Exhibit 1 at 24:45).

Glaspie testified that he called for backup "because the warrant was for… assault and battery or something to that effect with a firearm." (2 R.R. at 17). He testified that he intended to wait for backup to take the passenger into custody. (2 R.R. at 17).

The State failed to establish at the suppression hearing why it was reasonable to continue to detain Appellant so that Glaspie would have backup to arrest the passenger with a warrant. Glaspie did not testify as to why it was necessary to wait for another officer to appear for Glaspie to arrest the passenger. The State did not argue to the trial court why it was necessary to continue to detain Appellant while waiting for another officer to arrest the passenger.

If this Court finds that the continued detention of Appellant so that Glaspie could wait for the BCSO deputy to assist in arresting the passenger was reasonable under the Fourth Amendment, then this Court should find that the continued detention of Appellant after the passenger's arrest was unlawful.

The passenger was arrested approximately thirty-four minutes after the

traffic stop began. (State's Exhibit 1 at 34:00). Glaspie continued to detain Appellant on the side of the road for another five and a half minutes before approaching Appellant and asking for consent to search the vehicle. (State's Exhibit 1 at 39:45).

Once the passenger was arrested, every purpose of the original traffic stop had been dispelled. Glaspie had sufficient time to issue any warning or citation for traffic violations. He had already determined that Appellant was not driving impaired. (2 R.R. at 33). As soon as the passenger was arrested, Glaspie should have released Appellant. See *Lopez-Moreno*, 420 F.3d at 430-431; *Powell*, 732 F.3d at 369. Instead, Glaspie continued to detain Appellant on the side of the road. (State's Exhibit 1 at 34:00).

More than five minutes passed from the time of the passenger's arrest before Glaspie asked Appellant for consent to search the vehicle. (State's Exhibit 1 at 39:45). Appellant consented. (State's Exhibit 1 at 39:45). The illegal substances that formed the basis of the conviction in this cause were found in the vehicle during the search. (State's Exhibit 1 at 45:20).

Glaspie did not testify to any fact that justified continuing Appellant's detention on the roadside after the passenger's arrest. Glaspie did not testify regarding any fact that he learned that would have created additional reasonable suspicion of criminal activity. See *Powell*, 732 F.3d at 369.

The State argued at the motion to suppress hearing that the delay between the passenger's arrest and Glaspie's request for consent was reasonable because "in any other traffic stop within two or three minutes of the stop it would not be unreasonable to ask for such consent." (2 R.R. at 35-36). The State's argument fails in that it is measuring the reasonableness of time from the arrest of the passengers instead of the inception of the traffic stop. The argument further fails, in that the original purpose of the traffic stop had been dispelled, and the State failed to establish any new reasonable suspicion to justify a continued delay of Appellant. See *Lopez-Moreno*, 420 F.3d at 430-431. As the United States Supreme Court recently held, any delay that exceeds what is reasonably necessary to effectuate the original purpose of the stop, and is not "supported by individualized suspicion" violates the Fourth Amendment. *Rodriguez*, 135 S. Ct. at 1616.

If this Court finds that the traffic stop was justified at the inception of the stop, then this Court should find that the Appellant was unlawfully detained when Glaspie prolonged the traffic stop longer than what was necessary to effectuate the purpose of the stop. *See Lopez-Moreno*, 420 F.3d at 430. This Court should find that the State failed to prove that it was reasonable for Glaspie to continue to detain Appellant after the warrant check was complete. If this Court finds that it was reasonable for Glaspie to continue to detain Appellant to wait for assistance to

46

arrest the passenger with warrants, this Court should find that any length of detention after the passenger was arrested was unreasonable and violative of the Fourth Amendment.

Consent

The State may argue that Appellant's consent obviates any possible Fourth Amendment violation. Consent to search may dissipate a Fourth Amendment violation, but it does not necessarily do so. *United States v. Chavez-Villarreal*, 3 F.3d 124, 127 (5th Cir. Tex. 1993). Even if voluntarily given, "consent does not remove the taint of an illegal detention if it is the product of that detention and not an independent act of free will." *Id*. at 127-128. A reviewing court should consider "(1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct." *Id*. at 128; *Pineda v. State*, 444 S.W.3d 136, 144 (Tex. App. -- San Antonio 2014, pet. ref'd)

An application of these factors to Appellant's case weighs in favor of a finding that Appellant's consent was a product of the unlawful detention and not an independent act of his own free will. As to the first factor, "the temporal proximity of the illegal conduct and the consent," the stop occurred almost 35 minutes before the request for consent, but the detention was unlawfully extended throughout the course of the detention. *Pineda*, 444 S.W.3d at 144. The complained of illegal

conduct is the extended detention, which had a growing deleterious effect on Appellant's will as it continued. As to the second factor, the record shows no intervening circumstances that would have "lessened the taint of the unlawful stop" or made Appellant feel free to leave. *Id.* at 144. The circumstances actually were worsened: Appellant was frisked, he was subject to field sobriety tests, Appellant's passenger was arrested and Appellant was told by Glaspie that the passenger was going back to prison. (State's Exhibit 1 at 17:36 to 20:10, 36:16). The third factor also weighs in Appellant's favor, as Glaspie's purpose was obviously to fish for some narcotics violation, though Glaspie did not articulate any facts supporting newly developed reasonable suspicion on the record. Glaspie approached the passengers of the vehicle after the first passenger's arrested and asked them if there was "anything else" in the car. (State's 1 at 36:25). Glaspie then asked Appellant if there was anything in the car that he shouldn't have. (State's Exhibit 1 at 39:36). On his way to search the car, Glaspie commented that "Brazoria is real familiar with [Nichols], they say she's either going to have dope or pills on her." (State's Exhibit 1 at 39:55).

Applying the factors in *Chavez-Villarreal,* Appellant's consent was a product of the continued illegal detention and Glaspie's actions during the detention, including but not limited to performing the HGN test on Appellant, frisking Appellant, Glaspie questioning Appellant and the vehicle's passengers after the

48

passenger's arrest, and comments to Appellant about the passenger going to prison. Appellant's consent was not an act of free will and was therefore not constitutionally valid.

Suppression

All evidence obtained in violation of the Constitution is inadmissible. *Mapp v. Ohio*, 367 U.S. 643, 655 (U.S. 1961). Texas has codified the exclusionary rule, prohibiting admission of all evidence obtained in violation of the Constitution, or the laws of the State of Texas, or the United States. Tex. Code Crim. Proc. Ann. Art. 38.23.

The substances in the vehicle were found on account of a search of Appellant's vehicle. (2 R.R. at 9; State's Exhibit 1 at 45:00). The search would not have occurred but for the unlawful prolonging of Appellant's detention by Glaspie. Under both the Fourth Amendment and Article 38.23, the evidence obtained in the search of Appellant's vehicle should be suppressed.

Harm

The error complained of in Appellant's second point of error is a violation of the Fourth Amendment of the United States Constitution. As it is constitutional error, it is subject to review under Texas Rule of Appellate Procedure 44.2(a), which requires reversal unless "the court determines beyond a reasonable doubt that the error did not contribute to conviction or punishment." TEX. R. APP. PROC.

44.2(A).

If this Court finds that the Fourth Amendment does not necessitate suppression, but that article 38.23 would require suppression, and if this Court applies a harm analysis per Texas Rule of Appellate Procedure 44.2(b), the result of the harm analysis is the same. TEX. R. APP. PROC. 44.2(B). A harm analysis under 44.2(b) is done by determining whether the error had a "substantial and injurious effect or influence in determining the… verdict." *King,* 953 S.W.2d at 271.

In the present case, the admission into evidence of the controlled substances that were found in the vehicle, on account of the unlawful seizure, resulted in Appellant's conviction. If the controlled substances found in the vehicle were excluded from evidence, there would be no evidence that Appellant possessed a controlled substance. The error was harmful and had a substantial and injurious effect or influence in determining the verdict.

The trial court erred by denying Appellant's motion to suppress. Glaspie stopped Appellant for a traffic violation or suspicion of intoxication. Once the purpose of the traffic stop was dispelled, and Glaspie completed the warrant checks on the occupants of the vehicle, any further delay in releasing Appellant was unlawful. Appellant's eventual consent to a search of the vehicle was a product of the unlawfully prolonged detention, not a product of Appellant's free will. Glaspie

unlawfully prolonged the detention of Appellant to continue to fish for evidence of a narcotics violation, even though he could not and did not articulate facts to support his hunch in his testimony at the suppression hearing.

Appellant prays that this Court find that all evidence found as a result of the unlawfully prolonged detention of Appellant be suppressed and reverse the decision of the trial court on Appellant's motion to suppress. Appellant prays that this Court reverse the judgment of the trial court.

## APPELLANT'S THIRD POINT OF ERROR

*If this Court finds that the trial court erred by denying Appellant's motion to suppress, this Court should find that the evidence remaining, after excluding the suppressible evidence, is legally insufficient to sustain the conviction against Appellant for possession of a controlled substance.*

## Standard of Review and Applicable Law

When reviewing the sufficiency of the evidence, the reviewing court must view all of the evidence in the light most favorable to the verdict to determine whether the finder of fact was rationally justified in finding guilt beyond a reasonable doubt. *Pomier v. State*, 326 S.W.3d 373, 378 (Tex. App. -- Houston [14th] 2010, no pet.). The reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by re-evaluating the weight and credibility of the evidence. *Id*. The court must defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *Id*. The reviewing court has a duty to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *Id*.

Where a reviewing court finds that a trial court should have suppressed evidence, and the remaining evidence is legally insufficient to support a conviction, the reviewing Court may reverse the conviction and render a judgment of acquittal. *See Bass v. State*, 64 S.W.3d 646, 651 (Tex. App. -- Texarkana 2001,

pet. ref'd.).

**Relevant Facts**

Appellant was convicted of possession of a controlled substance, penalty group one, one to four grams of methamphetamine. (1 C.R. at 5, 47). The methamphetamine that was found in his vehicle was discovered as a result of the stop and seizure complained of in Appellant's First and Second Points of Error.

Glaspie found the controlled substance alleged in the indictment in the vehicle driven by Appellant. The substance was found during the search conducted after Garcia was arrested. (3 R.R. at 7-9).

**Analysis**

If this Court finds that the trial court erred by denying Appellant's motion to suppress, then this Court should find that the evidence that remains after excluding the suppressible evidence is legally insufficient to support a conviction for possession of a controlled substance.

The controlled substance that forms the basis of the prosecution in this case was found in the vehicle operated by Appellant. (2 R.R. at 9; 3 R.R. at 9-10; State's Exhibit 1 at 45:00). The substance was not found until after Garcia had been arrested. (3 R.R. at 7-9; State's Exhibit 1 at 45:00).

Two elements of the offense of possession of a controlled substance are 1) possession and 2) controlled substance. Tex. Health & Safety Code §481.115

(Lexis Advance current through 2013 3d CS); *Seals v. State*, 187 S.W.3d 417, 419 (Tex. Crim. App. 2005). If this Court finds that the evidence obtained as a result of the stop, or evidence obtained as a result of the unlawful detention, should be suppressed, then this Court should necessarily find that the evidence of controlled substances in Appellant's vehicle should be suppressed.

If this Court finds that evidence of the controlled substances found in Appellant's vehicle should be suppressed, then there is no evidence remaining that Appellant possessed the controlled substance alleged in the indictment. As the remaining evidence cannot support a finding beyond a reasonable doubt that Appellant possessed a controlled substance, this Court should also find that the remaining evidence is legally insufficient.

Where a reviewing court finds that a trial court should have suppressed evidence, and the remaining evidence is legally insufficient to support a conviction, the reviewing Court may reverse the conviction and render a judgment of acquittal. *See Bass v. State*, 64 S.W.3d at 651.

Wherefore, Appellant prays that this Court find that the trial court erred by denying Appellant's motion to suppress. Appellant further prays this Court find that the evidence of the offense of possession of a controlled substance remaining, after excluding the suppressible evidence, is legally insufficient to support a conviction for the indicted offense. The Appellant prays that this Court reverse the

judgment of conviction and render a judgment of acquittal in this cause.

# APPELLANT'S FOURTH POINT OF ERROR

*The trial court was not rationally justified in finding beyond a reasonable doubt that Appellant possessed a controlled substance as alleged in the indictment. Deferring to the trial court's rational resolution of conflicting evidence, the evidence admitted at trial did not support a conclusion that Appellant committed possession of a controlled substance.*

## Standard of Review and Applicable Law

When reviewing the sufficiency of the evidence, the reviewing court must view all of the evidence in the light most favorable to the verdict to determine whether the [finder of fact] was rationally justified in finding guilt beyond a reasonable doubt. *Pomier,* 326 S.W.3d at 378. The reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by re-evaluating the weight and credibility of the evidence. *Id*. The court must defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *Id*. The reviewing court has a duty to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *Id*.

The elements of possession of a controlled substance are "that the defendant knowingly or intentionally possessed a controlled substance." *Seals*, 187 S.W.3d at 419; Tex. Health & Safety Code §481.115

**Relevant Facts**

Appellant was driving a vehicle that was stopped by Glaspie around two o'clock in the morning. (2 R.R. at 12). Glaspie watched the vehicle leave a house that he described as a narcotics house, where methamphetamine was sold. (2 R.R. at 15). Glaspie described Appellant as agitated and irritated. (3 R.R. at 6). There were a total of four people in the vehicle, including Appellant. (3 R.R. at 19-20).

Glaspie instructed Appellant to step out of the vehicle and Appellant complied. (2 R.R. at 16; State's Exhibit 1 at 16:28). Appellant stood on the side of the road while Glaspie conducted the HGN test, the warrant checks, waited on backup, and arrested Garcia. (State's Exhibit 1 at 16:28 to 39:45). During this time, the other three occupants of the vehicle were in the car, and partially obscured from Glaspie's view, for approximately eighteen minutes. (State's Exhibit 1 at 16:28 to 34:00).

After he arrested Garcia, Glaspie searched the vehicle. (3 R.R. at 7-9). In the front passenger side of the vehicle he found a Crown Royal makeup bag that contained a pipe commonly used for consuming illegal substances. (3 R.R. at 8). He found another Crown Royal bag in the passenger side floorboard, which also contained a pipe. (3 R.R. at 8). He found a prescription pill bottle containing pills. (3 R.R. at 9). He opened the center console and found three bags containing a substance he suspected to be methamphetamine. (3 R.R. at 9-10). He also found

57

four bags containing rolling papers. (3 R.R. at 9). After finding the crystalized substance, Glaspie arrested Appellant and the front seat passenger, then continued the search. (3 R.R. at 10). Glaspie then found a small bag of a synthetic cannabinoid in the center console. (3 R.R. at 10).

Johnican testified that after Glaspie removed Appellant from the car, Nichols reached across the driver's seat and felt in the door pocket, then put her hands back in her lap. (3 R.R. at 48-50). Johnican also testified that Nichols said that "she had two sacks." (3 R.R. at 50). Nichols opened the center console and closed it. (3 R.R. at 50). Nichols told Johnican that she put methamphetamine in the center console. (3 R.R. at 67).

As the officers approached the vehicle to search it, Glaspie told the BCSO deputy that Nichols could be expected to have "dope or pills on her." (State's Exhibit 1 at 39:55).

**Analysis**

Viewing all of the evidence in a light most favorable to the verdict, and deferring to the trial court's rational resolution of any conflicting evidence, the evidence admitted at trial was legally insufficient to support Appellant's conviction for possession of the controlled substance as alleged in the indictment.

A conviction for possession of a controlled substance requires proof that "(1) the accused exercised control, management, or care over the substance; and (2) the

accused knew the matter possessed was contraband." *Poindexter v. State*, 153

S.W.3d 402, 405 (Tex. Crim. App. 2005). A reviewing court conducting a legal

sufficiency analysis of a possession of a controlled substance conviction where

"the accused is not in exclusive possession of the place where the substance is

found" should determine whether "there are additional independent facts and

circumstances which affirmatively link the accused to the contraband." *Id*. at 406.

The non-exhaustive list of affirmative links that Texas courts look to when

analyzing a possession case such as Appellant's are:

> (1) the defendant's presence when a search is conducted; (2) whether
> the contraband was in plain view; (3) the defendant's proximity to
> and the accessibility of the contraband; (4) whether the defendant
> was under the influence of narcotics when arrested; (5) whether the
> defendant possessed other contraband when arrested; (6) whether the
> defendant made incriminating statements when arrested; (7) whether
> the defendant attempted to flee; (8) whether the defendant made
> furtive gestures; (9) whether there was an odor of contraband; (10)
> whether other contraband or drug paraphernalia were present; (11)
> whether the defendant owned or had the right to possess the place
> where the drugs were found; (12) whether the place where the drugs
> were found was enclosed; (13) whether the defendant was found with
> a large amount of cash; and (14) whether the conduct of the
> defendant indicated a consciousness of guilt.
> *Torres v. State*, 466 S.W.3d 329, 332 (Tex. App. -- Houston [14th
> Dist.] 2015, no pet.)

Applying these factors to Appellant's case, the number and weight of the

affirmative links does not tie Appellant to the controlled substances in the

center console of the vehicle. First, Appellant was present on the scene when

the vehicle was searched, but he had been outside of the car for over twenty

minutes once the search began. (State's Exhibit 1 at 16:28 to 40:30). Second, the contraband was not in plain view, it was found in the closed center console. (3 R.R. at 9-10). Third, the Appellant had no access to the center console for more than twenty minutes before the search. On the other hand, the other three occupants of the vehicle had access to the center console for almost eighteen minutes while Appellant was standing on the side of the road. (State's Exhibit 1 at 16:28 to 34:00). After Garcia was arrested, the other two occupants continued to have access to the center console, while Appellant stood on the side of the road. (State's Exhibit 1 at 34:00 to 40:30). Fourth, Appellant was not impaired when the car was stopped. (2 R.R. at 33). As to the fifth and tenth factors, there was other contraband found in the car, but none in the exclusive possession of the Appellant or on his person. (3 R.R. at 8-10). Sixth, the Appellant made no incriminating statements. Seventh, the Appellant did not attempt to flee, but instead complied with the HGN test and stood on the side of the road for almost thirty minutes before he was arrested. (State's Exhibit 1 at 16:28 to 45:20). Applying the eighth factor, furtive gestures, Glaspie testified that Appellant was agitated, fidgety, and irritated. (2 R.R. at 16). He did believe that Appellant was trying to hide something. (2 R.R. at 22). Applying the ninth factor, Glaspie did not testify about any incriminating odor. As to the eleventh factor, Appellant had rented the car and had the right

to posses it. (3 R.R. at 45). Twelfth, the substance was found in a closed center console. (3 R.R. at 9). Thirteenth, Glaspie did not testify about finding any amount of cash in the vehicle. Finally, Appellant's conduct did not indicate a consciousness of guilt. He complied with Glaspie's orders, he waited on the roadside, and consented to a search of his vehicle.

Taken together, the force of the affirmative links test shows that Appellant did not exercise "control, management, or care over the substance." *Poindexter*, 153 S.W.3d at 405.

Additionally, the uncontroverted testimony of Johnican was that Nichols placed the bags of methamphetamine in the center console after Glaspie made Appellant leave the car. (3 R.R. at 50, 67). Glaspie's statement that Nichols would be in possession of some illicit substance corroborated Johnican's testimony. (State's Exhibit 1 at 39:55).

Reviewing the evidence in Appellant's case in a light most favorable to the trial court's verdict, the trial court was not rationally justified in finding guilt beyond a reasonable doubt. *Pomier v. State*, 326 S.W.3d at 378. The evidence admitted at trial does not support a conclusion that the defendant committed the crime of possession of a controlled substance as alleged in the indictment.

Appellant prays that this Court find that the evidence in this cause is

legally insufficient and reverse and render a judgment of acquittal in this cause.

## CONCLUSION AND PRAYER

Wherefore, Appellant prays that this Court find that the trial court erred by denying Appellant's motion to suppress. Appellant prays that this Court find that all of the evidence obtained as a result of the traffic stop of the vehicle operated by Appellant was obtained in violation of the Fourth Amendment. Alternatively, Appellant prays that this Court find that the arresting officer unreasonably delayed the detention of Appellant in violation of the Fourth Amendment and that all evidence obtained as a result of that detention was obtained unlawfully. Appellant prays that this Court find that Appellant's consent to the search of the vehicle was not an independent act of his free will but the product of the unlawful stop and unreasonably prolonged detention.

Further, Appellant prays that this Court find that the evidence at admitted at trial in this cause did not support a conviction for possession of a controlled substance.

Appellant prays that this Court reverse the judgment of the trial court and render a judgment of acquittal in this cause. Alternatively, Appellant prays that this Court reverse the judgment of the trial court and remand to the trial court for further proceedings. Appellant prays for any and all relief to which he may be entitled.

63

Respectfully submitted,

/s/ Joseph Kyle Verret
Joseph Kyle Verret
THE LAW OFFICE OF KYLE VERRET, PLLC
Counsel for Appellant
TBN: 240429432 47
11200 Broadway, Suite 2743
Pearland, Texas 77584
Phone: 281-764-7071
Fax: 281-764-7071
Email: kyle@verretlaw.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Brief for Appellant was served on the Counsel for the Appellee, David Bosserman, at the Criminal District Attorney's Office of Brazoria County, Texas, by service through electronic filing on this 31st day of December, 2015.

/s/Joseph Kyle Verret
Joseph Kyle Verret
TBN: 2402932

## CERTIFICATE OF WORD COUNT

I do hereby certify that the total word count for this document is 11,391 excluding those parts specifically excluded in Texas Rule of Appellate Procedure 9.4(i)(1) which is less than 15,000 words allowed per Texas Rule of Appellate Procedure 9.4.

/s/Joseph Kyle Verret
Joseph Kyle Verret
TBN: 2402932